## QUISENBERRY v. DAVIS.

### Opinion delivered October 28, 1918.

1. JUDGMENT—RES JUDICATA.—To render a judgment in one suit conclusive of a matter sought to be litigated in another, it must appear from the record, or from extrinsic evidence, that the particular matter sought to be concluded was raised and determined in the prior suit.

2. SAME—RES JUDICATA.—A complaint in a former action stated a cause of action upon each of three promissory notes, the first for $250, the second for $260, the third for $925. Judgment by default was taken for $583.86, without specifying upon which particular note or notes the judgment was based. The preponderance of the extraneous testimony was that judgment was not taken on the third note. *Held* that a finding of the chancellor that the third note was not included in the judgment will be sustained.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A finding of fact by a chancellor will be sustained on appeal where it is not against the preponderance of the evidence.

Appeal from Benton Chancery Court; *Ben F. Mc-Mahan*, Chancellor; affirmed.

*Duty & Duty,* for appellants.

1.  No insolvency was shown by the evidence. Insolvency of the husband must be alleged and clearly proven. 66 Ark. 487; 80 *Id.* 447; Acts 1887, p. 193. Outstanding notes or unsatisfied judgments alone do not prove insolvency. 74 Ark. 161; 80 *Id.* 447. The bill should have been dismissed as insolvency was not proven and it was not shown that the remedy at law was adequate. 100 Ark. 565; 56 *Id.* 476; 27 *Id.* 157.

2.  The court's findings are contrary to the evidence. The husband purchased as agent for the wife. A husband honestly indebted to his wife may prefer her, and it is not fraudulent as to other creditors. 20 Cyc. 599; 137 U. S. 234; 123 *Id.* 426; 105 Fed. 16; 48 N. J. Eq. 615; 107 Ala. 265.

3.  The matter was *res judicata* and settled by the former judgment. It was the *identical* cause of action between the same parties. 15 R. C. L. § 429, p. 952; 157 U. S. 683; 7 Enc. Ev. 795; 15 R. C. L. 461. See also 154 U. S. 118; 160 Fed. 41; 1 Freeman on Judg. § 259; Bigelow on Estop, 75; 141 Fed. 630; 15 R. C. L. § 641; 152 U. S. 252; 107 Ark. 46; 97 *Id.* 588; 96 *Id.* 540.

4.  The proof of identity of causes of action is ample and conclusive. Evidence outside the record was not admissible. The record is conclusive. 125 U. S. 698; 22 S. W. 794; 24 How. 344; 94 U. S. 423, 351.

5.  The former judgment was "on the merits" of the cause. 7 Enc. Ev. 790; 7 Wall 82; 107 Ark. 46; 20 *Id.* 85, 91; 23 Cyc. 1097; Freeman on Judg. 330; 141 Fed. 630; 96 Ark. 540; 109 Fed. 927. The plea of *res adjudicata* should have been sustained. 199 S. W. 110; 23 Cyc. 1090, 1095; 5 Ark. 424; 73 *Id.* 27; 166 U. S. 533; 23 Cyc. 1302 (b).

*E. H. Thomas,* of Kansas City, Mo., and *W. B. Smith,* for appellees.

1.  The defense of *res judicata* was not good. The burden of proof was on appellants to show that the $925

note was considered and adjudicated in a judgment for only $583.36. Black on Judg. (2 Ed.) § 629; Jones on Ev. (2 Ed.) § 601. It was proved that this note was *not* considered nor adjudicated. Black on Judg. (2 Ed.) § 624; 23 Cyc. 1229-30, 1140; 47 Ark. 378; Black on Judg. (2 Ed.) § 620. See also 23 Cyc. 1171-2-3.

2. The matter here was not actually litigated nor considered. 23 Cyc. 1311-12-13; Black on Judg. (2 Ed.) § 614. See also 15 R. C. L. § § 429, 459-4; Jones on Ev. (2 Ed.) § 597; Black on Judg. § § 609 to 632.

3. Extrinsic evidence was admissible to show that the matter was not adjudicated. Jones on Ev. (2 Ed.) § 599; 94 U. S. 608; 66 Ark. 336; 62 *Id.* 78; 11 *Id.* 666; Black on Judg. § 624, etc.

4. The issues must be the same and the burden was on appellants to prove it. Jones on Ev. (2 Ed.) § 601. They failed.

5. The findings of the chancellor are conclusive. 196 S. W. 119. They are sustained by the law and evidence. The purchase by the husband and taking the deed in the wife's name were fraudulent as to creditors. 20 Cyc. 605 (2), 605-6 (3); 196 S. W. 119; 101 Ark. 573; 45 *Id.* 520; 14 *Id.* 69; 33 *Id.* 328; 89 *Id.* 77; 176 S. W. 684; 86 Ark. 225; 185 S. W. 262.

McCULLOCH, C. J. John M. Davis, State Bank Commissioner, and John Schaap & Sons Drug Company instituted this action as creditors of B. W. Quisenberry against the latter and his wife, Virginia Quisenberry, in the chancery court of Benton County to subject to the payment of the debts due to the plaintiffs certain real estate in Rogers, Arkansas, which had been conveyed to Mrs. Quisenberry. The allegation is that the property was purchased at a bankruptcy sale in January, 1916, by B. W. Quisenberry, but that the title was taken in the name of his wife, Virginia, for the fraudulent purpose of cheating his said creditors.

The Bank Commissioner sued on a note executed by B. W. Quisenberry to the Citizens' Bank of Rogers, dated

May 25, 1914, for the sum of $925.00, payable ninety days after date with interest at the rate of ten per centum per annum. The Citizens' Bank of Rogers became insolvent, and was taken over by the State Bank Commissioner under authority of the statutes of the State. The other plaintiff, John Schaap & Sons Drug Company, sued for the balance due on a note executed by B. W. Quisenberry, which said balance at the time of the trial below aggregated with interest the sum of $281.07.

There is no controversy here as to the fact that B. W. Quisenberry is indebted to John Schaap & Sons Drug Company in the amount for which the decree was rendered, but there is a controversy as to the alleged indebtedness of Quisenberry to the Citizens' Bank of Rogers. The answer not only contains a denial of the indebtedness, but pleads a former judgment of the circuit court of Benton County in bar of the right of recovery in the present action. The answer also contains a denial of the charge in the complaint that the conveyance to Mrs. Quisenberry was fraudulent. The chancellor found in favor of each of the plaintiffs upon all of the issues involved in the case, and rendered a decree in favor of each plaintiff for the amount of the debt, and declared the same a lien on the property involved in the litigation.

In support of the plea of *res adjudicata,* the defendant introduced in evidence the record of the former suit of the State Bank Commissioner v. B. W. Quisenberry for recovery on three promissory notes, including the one involved in the present suit, and in which case there was a judgment against Quisenberry by default. The complaint in said former action contained three separate paragraphs, each stating a cause of action upon a certain promissory note executed by Quisenberry to the Citizens' Bank of Rogers. The first paragraph was based on a note in the sum of $250; the second paragraph on a note in the sum of $260, and the last paragraph on a note for the sum of $925, the same note involved in the present action. The record shows a judgment by default for the sum of $583.36, without specifying upon which particular

note or notes the judgment was based. Mr. McGill of
Bentonville, who acted as Deputy State Bank Commis-
sioner in charge of the affairs of the defunct Citizens'
Bank of Rogers, was introduced as a witness, and testified
concerning the judgment in the former action against
Quisenberry. He testified that he was a member of the
firm of attorneys who represented the plaintiff in that
action, and that he attended to the taking of the default
judgment in the Quisenberry case, as well as a large num-
ber of other actions which he had instituted against other
parties for indebtedness due the Citizens' Bank of Rog-
ers. He testified that when the cases were reached on the
docket he took the papers and sat down at a desk and fig-
ured out the amounts for which he was to ask judgment
and marked the separate amounts on the wrappers of the
court papers and passed them up to the trial judge for
the purpose of making notations on the docket. He iden-
tified the figures on the wrapper in the Quisenberry case
as being in his own handwriting, and called attention to
the fact that the amount for which the judgment was
taken was the precise amount of the first two notes set
forth in the complaint, with accumulated interest up to
the time of the rendition of the judgment. Mr. McGill
stated that he could not remember definitely what his rea-
son was for failing to take judgment on the $925 note in-
volved in the present action, but that he is positive that
he did not take judgment on that note. He stated merely
as a matter of speculation what the different reasons
might have been for not doing so, or that it was a mere
oversight in the hurry of computing the amounts due in
so many cases in which he was asking default judgment.
But he testified definitely to the fact that he did not ask
for judgment on that note, and that the court did not
render any judgment on the cause of action set forth in
the paragraph based on that note. His testimony also
shows, what is apparent from the record, that the judg-
ment was one rendered by default, and that the defendant,
Quisenberry, was not present. The testimony of Mr.
Quisenberry tended to show that he had paid the note, but

it is our opinion that the finding of the chancellor is not against the preponderance of the testimony.

Now, it has been repeatedly held by this court that, to render a judgment in one suit conclusive of a matter sought to be litigated in another, it must appear from the record, or from extrinsic evidence, that the particular matter sought to be concluded was raised and determined in the prior suit. That rule was announced by this court and the subject was fully discussed in the case of *Dawson v. Parham,* 55 Ark. 286, where Chief Justice Cockrill, in delivering the opinion of the court, quoted with approval the rule announced by the Supreme Court of the United States, in *Russell* v. *Place,* 94 U. S. 608, as follows: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

In connection with that quotation the following conclusion was stated: "If the equitable title was in fact at issue, it was incumbent upon the party relying upon the estoppel to prove by the record or otherwise that that title was actually adjudicated. If the fact is left in doubt, the question should be resolved against the party asserting the estoppel." That rule has been steadily adhered

to by this court in all the decisions since that time. *Shaver* v. *Sharp County,* 62 Ark. 76; *McCombs* v. *Wall,* 66 Ark. 336; *Fogel* v. *Butler,* 96 Ark. 87; *Cooper* v. *McCoy,* 116 Ark. 501; *Sauls* v. *Sherrick,* 121 Ark. 594.

The burden was on the defendants to prove the former adjudication, and they failed to do it. The adjudication of the particular cause of action involved in the present litigation does not appear from the face of the record in the former case, and no other evidence was introduced to show that this cause of action was then adjudicated. On the contrary, the record shows with reasonable certainty that, whatever the reason may have been, the note now in suit was not involved in the decision in the former action. There was no issue raised by pleading, for the defendant in that action did not appear at all, and it is certain that the court did not render a judgment on that particular cause of action. In addition to that, the evidence of Mr. McGill shows that no part of the note now in suit was involved in the judgment. The chancery court was correct, therefore, in its finding against the defendants on the plea of *res adjudicata.*

On the other branch of the case, there is a sharp conflict in the testimony which leaves some doubt on the question whether or not the property in controversy was purchased with the funds of Mrs. Quisenberry or whether it was bought with the funds of the husband and the title taken in her name for the fraudulent purpose of evading the payment of his debts. The proof shows beyond dispute that the purchase was actually made by B. W. Quisenberry at the public sale, and that after bidding in the property he directed the trustee who made the sale to issue the certificate of purchase in the name of Mrs. Quisenberry. The first payment was made by B. W. Quisenberry, and Mrs. Quisenberry made the two subsequent payments. It is the contention of the defendants that Mrs. Quisenberry was engaged in operating a small dairy farm near Rogers, and that the money used in purchasing this property was accumulated from the profits of the

dairy farm. Each of the defendants testified in support of this contention.

Of course, transactions of this sort between husband and wife are to be closely scrutinized, for, on account of the intimate relationship between them, it is difficult to contradict claims of this character. When the testimony is considered all together, we are unable to say that the finding of the chancellor is against the preponderance of the evidence. The statements of the defendants concerning the accumulation from the profits of the dairy farm of the funds with which the property was bought were not entirely satisfactory or reasonable, and the amount of those accumulations appears to be out of proportion to the probable profits of the farm. On the contrary, B. W. Quisenberry is shown to have been earning a much more considerable income from his own talents and labors, and it is quite reasonable to infer from the evidence adduced that he paid for the property in controversy with his own funds. The testimony in the case leaves the question in so much doubt that we do not feel at liberty to disregard the finding of the chancellor on this issue, especially in a case where the transactions involved are of such a character that it devolves on the defendant to show that the funds used were the property of the wife. The evidence is sufficient, too, to uphold the finding of the chancellor on the issue of Quisenberry's insolvency. It is shown that he had no property subject to execution.

Finding no error in the record, the decree must be affirmed, and it is so ordered.