HATCH *v.* SCOTT, ADMINISTRATRIX.

4-7975                                    197 S. W. 2d 559

Opinion delivered November 11, 1946.

Rehearing denied December 16, 1946.

*Wendell Utley* and *Henry B. Whitley,* for appellant.

*Garner & Clegg* and *A. A. Thomason,* for appellee.

McHANEY, Justice.   Since the submission of this case, the death of appellee, R. M. Scott, has been suggested and conceded, and, by agreement of both parties, Louise Scott has been appointed special administratrix of his estate, he having died intestate, and the cause has been revived in her name.

January 11, 1943, Henry F. Scott leased to appellant a certain brick building in Magnolia, Arkansas, known

as the Scott Building, at a rental of $50 per month in advance for the year 1943. The lease provides: "The lessee is to take said building as is and is to surrender possession January 31, 1943, in as good condition as now is, natural wear and tear excepted." The date "January 31, 1943," is an obvious error and December 31, 1943, was intended, since another clause provides that "the lessee shall have the use and possession of said building for and during the year 1943." It was signed by both parties on January 11, 1943. Written as a postscript at the bottom of said lease is the following: "With this lease A. F. Hatch is to have refusal of building for 3 or 5 years at same or more or less," and signed by the lessor, Henry Scott. It appears that Henry F. Scott, although not the sole owner of the Scott building, had the authority to make the lease agreement. In the latter part of November, 1943, appellee's intestate, R. M. Scott, who resided at Dermott, Arkansas, became the owner of said building, and, shortly thereafter began negotiations with appellant about the renewal of the lease. He testified that appellant called him over long distance telephone and offered him $75 per month, but witness told him he would take $100 per month. He understood from his brother that the Schlumberger Well Surveying Corporation, a subtenant of appellant, would pay $100 per month for the building. On December 23, 1943, appellant wrote intestate a letter, which acknowledges receipt of a letter from him of the 21st "in regard to the building I have leased from Mr. Henry Scott," in which letter he said: "If you are over in this county I will try to please you with a lease to where each of us can profit by it."

The parties not being able to agree on the amount of the rent for a new lease or a renewal of the old one, intestate, on January 29, 1944, brought an action of unlawful detainer in the circuit court against appellant to recover the possession of said building, in which he alleged his ownership, the lease and its termination, appellant's refusal to quit, and on January 22, 1944, that he gave notice to appellant, as required by law, to quit and deliver up the possession to him, copy thereof being

attached, but that appellant refused to surrender said possession and unlawfully holds and detains same. Damages were alleged of $200. He prayed possession and damages. The answer was a general denial and a specific denial that appellee "notified him according to law to quit and surrender possession of said property and denies that he is now unlawfully holding and detaining said property." As an affirmative defense, he set up the postscript or subjoined clause at the bottom of the lease, above quoted, claiming the "privilege of renewal of said lease for 3 or 5 years at the same rent or such other rent as could be agreed upon between the parties at a greater or lesser amount." Intestate filed a reply to the answer alleging that said renewal provision relied on "is ambiguous, indefinite and uncertain and insufficient to constitute an enforceable contract between the parties." Trial of this circuit court case on April 18, 1944, before the court sitting as a jury, resulted in a "judgment for defendant," and costs were adjudged against the plaintiff, R. M. Scott. No appeal was taken.

Thereafter, on December 12, 1944, Scott brought the present action in the chancery court against appellant, his complaint being captioned, "Bill in Equity for Construction of Instrument, Accounting Thereunder, and, in the Alternative, Cancellation of Instrument." In this action he set up the lease of said property to appellant for 1943 at $50 per month, with the understanding that further occupancy of said building, after 1943, should be at such rental as he could get from third parties or as the parties might mutually agree upon; that he was in a position to obtain $100 per month at all times since January 1, 1944, but that appellant insisted he had the right under said lease to hold said building at a rental of $50, and has in fact so held it without making any rental payments to him; that there exists between them a *bona fide* controversy as to the monthly rental price of said property, in that appellant insists on the right to hold at $50 and refuses to pay more, whereas he says he has the right to $100 per month from January 1, 1944; and that he is entitled to a construction of said lease and

an appropriate order directing appellant to account to him in the sum of $100 per month, and, in default of such accounting, to the cancellation of said lease and a writ of possession. He so prayed. Appellant answered setting up the proceedings in the circuit court and its judgment as *res judicata* and a general denial with a plea that he entered into possession on a one-year lease with the privilege of renewal for three or five years at his option, and expended large sums as a result thereof, and that any misunderstanding or controversy existing is of appellee's own making, of which he cannot take advantage.

On March 29, 1946, the court entered a decree for intestate and against appellant in the sum of $1,200 with 6 per cent. interest from date of the decree and for possession of the building and premises in controversy. The circuit court clerk was ordered to deliver to appellee the $1,200 deposited in his custody during the years 1944 and 1945 by appellant and the clerk of the chancery court was ordered to deliver to appellee all sums deposited with him by Schlumberger Well Surveying Corporation, with all costs to appellee. This appeal followed.

For a reversal of this decree it is first argued that the proceedings and judgment of the circuit court are *res judicata* of the present action. In connection with this plea appellant attached to his answer certified copies of the complaint and its exhibits, the answer with its exhibits, appellee's reply, as filed in the circuit court, and a certified copy of the circuit court judgment as hereinbefore set out. No transcript of the evidence heard by the circuit court was filed, nor was any extrinsic evidence offered to show what the circuit court's judgment was based on. As said by this court in *Cooper* v. *McCoy,* 116 Ark. 501, 173 S. W. 413: "It is well settled that a former judgment in order to be a bar must have been a decision of the merits of the cause. In *Smith* v. *McNeal,* 109 U. S. 426 (3 S. Ct. 319, 27 L. Ed. 986), the court, quoting from *Hughes* v. *U. S.,* 4 Wall. 232, 18 L. Ed. 303, said: 'In order that a judgment may constitute a bar to another suit it must be rendered in a proceeding between the same

parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect in pleadings or parties, or a misconception of the form of the proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.' See, also, *Sauls* v. *Sherrick,* 121 Ark. 594, 182 S. W. 269; *Quisenberry* v. *Davis,* 136 Ark. 115, 206 S. W. 139; *Howard-Sevier Road Imp. Dist.* v. *Hunt,* 166 Ark. 62, 265 S. W. 517.''

This language was quoted with approval in *Wallis* v. *Magnet Cove School Dist.,* 179 Ark. 729, 17 S. W. 2d 895, where it was held, to quote headnote: ''A judgment of the circuit court dismissing an action contesting an election for consolidation of two school districts because not brought within the 15 days after the election, as required by Crawford & Moses' Dig., § 8878, is conclusive upon that question, but was not conclusive upon the question of the power of the board of education to order the election.''

This case cited a number of previous decisions of this court, sustaining the holding above quoted in *Cooper* v. *McCoy.* One of these is *Quisenberry* v. *Davis,* 136 Ark. 115, 206 S. W. 139, where Chief Justice McCulloch used this language: ''Now, it has been repeatedly held by this court that, to render a judgment in one suit conclusive of a matter sought to be litigated in another, it must appear from the record, or from extrinsic evidence, that the particular matter sought to be concluded was raised and determined in the prior suit. That rule was announced by this court and the subject was fully discussed in the case of *Dawson* v. *Parham,* 55 Ark. 286, 18 S. W. 48, where Chief Justice Cockrill, in delivering the opinion of the court, quoted with approval the rule announced by the Supreme Court of the United States, in *Russell* v. *Place,* 94 U. S. 608, 24 L. Ed. 214, as follows: 'It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment

it must appear either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible.''

In the circuit court, the action was one in unlawful detainer, and the principal question involved in that case was the appellee's right to the possession of the property and the court held against that right. True, appellee asked for damages in that action in the sum of $200, but the court made no adjudication of damages in that action or of rents even though appellant admitted in his answer he was holding under a lease which provided for rent at $50 per month and that he had kept up such monthly payments at all times. In the case now at bar, possession was not prayed. The prayer was ''for a construction of the lease agreement herein involved and appropriate order and judgment directing defendant (appellant) to account to plaintiff under said construction and, in default to so account that said lease agreement be canceled'' and that he have a writ of possession. While the two actions were between the same parties and grew out of the lease of the same building, the relief sought in each was wholly different. The relief sought in the present action was the collection of the accumulated rental undisputedly due appellee in some amount, appellant claiming he owed only $50 per month whereas appellee claimed $100 per month. The judgment for appellant did not adjudicate the damages, as appellant had deposited with the clerk the rents he admittedly owed, and this judgment was not *res judicata* of the

rents accruing subsequent to April 18, 1944. *Blume* v. *Lightle,* 180 Ark. 136, 20 S. W. 2d 630. But the complaint in the circuit court raised issues other than the right to the immediate possession and damages. One of such issues was whether the notice required by law had been legally given. The complaint so alleged and the answer specifically denied such notice. It may be that the proof in the circuit court failed to show that such notice was given, and this would have been sufficient to justify the judgment of the circuit court, without a decision on the merits of the case. There was no extrinsic proof in the chancery court to show that the particular matter sought here to be concluded by the circuit court judgment was in fact decided, and the plea of *res judicata* must fail because, as said in *Quisenberry* v. *Davis, supra,* "it must appear from the record or from extrinsic evidence, that the particular matter sought to be concluded was raised and determined in the prior suit." The record does not show it and there was no extrinsic evidence. So, appellant's estoppel plea must fail.

Another argument is that the postscript or added clause at the bottom of the lease, above quoted, should be construed to read "with this lease A. F. Hatch is to have refusal of the building for five years at the same." But courts cannot make contracts for parties. We have held that a covenant to renew upon such terms as may be agreed upon is void for uncertainty. *Keating* v. *Michael,* 154 Ark. 267, 242 S. W. 563. It is nothing more than an agreement to make an agreement. This case is not like or similar to our recent case of *Beasley* v. *Boren, ante,* p. 608, 197 S. W. 2d 287. It also differs from *Nakdimen* v. *Atkinson Imp. Co.,* 149 Ark. 448, 233 S. W. 694, where the contract provided that a board of arbitrators should fix the rental value. Here the parties never did agree upon the rent to be paid after January 1, 1944, or the length of the renewal term, whether three or five years, thus demonstrating the ineffectiveness of the added clause relied on and the matter was in dispute before January 1, 1944.

The only other question argued by appellant is that the judgment dispossessing him is more than intestate asked for in his original complaint in this action, and that he should be given a reasonable time to comply with the judgment before he is ousted. During the years 1944 and 1945, appellant deposited with the clerk of the circuit court $50 per month or a total of $1,200 for rent. The court found the rental value to be $100 per month, about which there is no dispute, because appellant sub-let to Schlumberger at that price, and ordered the circuit clerk, who is also clerk of the chancery court, to pay appellee the $1,200 in his possession and rendered judgment against appellant for the $1,200 still due. We do not understand that there is any question about the rent for 1946, because the sub-tenant Schlumberger has been paying $100 per month into the registry of the chancery court during this time. We do not think appellant is entitled to any additional time to comply with the decree, since he has had possession for nearly three years since his lease expired without right.

The decree is accordingly affirmed.