NAKDIMEN v. ATKINSON IMPROVEMENT COMPANY.

Opinion delivered July 4, 1921.

1. LANDLORD AND TENANT—COVENANT TO RENEW LEASE.—While covenants for continued renewals of leases are not favored because they tend to create a perpetuity, they are valid when there is an express covenant to that effect.

2. LANDLORD AND TENANT—COVENANT TO RENEW LEASE—CONSTRUCTION. — The general rule is that where a provision for renewal of a lease is in general terms, the lessee is entitled to only a single renewal for the same term and at the same rent.

3. LANDLORD AND TENANT—RIGHT TO RENEWAL OF LEASE.—Under a lease for a ten-year period stipulating that, at the expiration of a period of ten years, the rental should be fixed by arbitration, it was intended that there should be a renewal of the lease for the further period of ten years at a rental to be fixed by arbitration.

4. SPECIFIC PERFORMANCE—CONTRACTS INVOLVING SKILL OR JUDGMENT.—Under the rule that chancery courts will not decree specific performance of contracts requiring continuous acts involving mechanical skill and judgment or technical knowledge, or acts requiring special skill, judgment and discretion, equity will not enforce specifically a contract requiring the continuous operation of an elevator.

5. ARBITRATION AND AWARD—ENFORCEMENT BY COURT OF CONTRACT TO ARBITRATE.—Where the essence of a contract was the renewal of a lease for another term, the fixing of the rental for that period by arbitration being merely auxiliary to the main contract, the party refusing to name an arbitrator cannot be heard to complain where the court performs or provides for the performance of such service.

6. LANDLORD AND TENANT—RENEWAL OF LEASE—VALIDITY OF CONTRACT.—A clause in a contract of lease providing for renewal of the lease at the end of the term at a rental to be fixed by arbitration is not void as being too indefinite to be enforceable.

7. REFORMATION OF INSTRUMENTS—BURDEN OF PROOF.—While parol evidence is admissible in an action to reform an instrument on the ground of fraud or mistake, the evidence to warrant reformation must be clear and convincing.

8. EQUITY—ADMINISTERING COMPLETE RELIEF.—Where equity takes jurisdiction for one purpose, it takes it for all purposes, and will grant complete relief.

9. LANDLORD AND TENANT—EVICTION—DAMAGES.—Where a tenant is unlawfully evicted from the premises by the landlord, he may recover as damages whatever loss results to him as a direct and natural consequence of the wrongful act of the landlord.

10. APPEAL AND ERROR—REVERSAL—REOPENING CHANCERY CASE—Where a decree in a chancery case is reversed and remanded for further proceedings, and it appears to the Supreme Court that the testimony upon any branch of the case has not been fully developed, or that the court in making a finding on a particular branch of the case has proceeded upon an erroneous theory, it is within the province of the Supreme Court to allow the case to be reopened and further testimony taken on that point.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

### STATEMENT OF FACTS.

This is a suit in equity by appellee against appellants to enforce the specific performance of a renewal covenant in a lease, and also to compel the defendants to submit to an arbitration to fix the rent as provided in the covenant of renewal.

The lease is in writing and is as follows:

"State of Arkansas,
County of Sebastian, ss.

"This instrument witnesseth a contract this day entered into by and between I. H. Nakdimen, hereinafter called the party of the first part, and Atkinson Improvement Company, hereinafter called the party of the second part, which is in the words and figures following, towit:

"The party of the first part contemplates the erection of a six-story building upon his lot lying immediately

west of and adjacent to the Merchants National Bank building, owned by the party of the second part, on Garrison Avenue, Fort Smith, Arkansas; and, for the mutual benefit of said parties of the first and second parts, they have entered into the following agreement and contract:

"For and in consideration of the sum of one dollar each to the other in hand paid, receipt of which is hereby acknowledged, and the mutual concessions, covenants and agreements hereinafter set out; the party of the first part is hereby granted the privilege and permission to use, for the period of ten years from the completion of his said building, the lobby and stairway of the Merchants National Bank Building, paying as rent and compensation for said privilege and use, to the party of the second part, the sum of twenty-five dollars per month, the said sum to be paid in advance, on the first day of each month during the said ten years; and in order to have such use and privilege said party of the first part is hereby authorized and permitted to cut through the wall of said Merchants National Bank Building, on the first floor, for the purpose of access to his elevator, which is to be so located in his own building as to be accessible from the lobby of the Merchants National Bank Building, and on the second, third, fourth, fifth and sixth floors, he is to cut archways, so as to give direct communication from his building to the said Merchants National Bank Building at the elevators in each, so that the said elevators shall be common to both buildings.

"This work of cutting through said wall shall be done in a skillful and workmanlike manner, so as not to injure or impair said wall or said building, and said openings shall be finished in the same style and material as that used in said Merchants National Bank Building; and all this work shall be done at the expense of the party of the first part.

"It is mutually agreed that at the expiration of said period of ten years, the rental to be paid by the party of

the first part to the party of the second part for the concession and privilege herein granted, as herein set out, shall be fixed by a board of arbitrators, three in number, one to be named by each of the parties hereto, and the third to be selected by the two so named by the parties hereto, and that the award of any two of said arbitrators shall be final and conclusive upon the parties hereto.

"And it is further mutually agreed that in cutting through the said wall and making said openings and using the same, party of the first part must do the work and use said opening so as not to increase the rate of fire insurance upon said Merchants National Bank Building, and that if such work and use can not be accomplished without increasing the present rate of fire insurance upon said building then the party of the first part is to pay to the party of the second part said increased rate of insurance; and he hereby obligates himself to pay the same.

"And said party of the first part hereby obligates and binds himself to do, keep and perform all the acts and things herein undertaken by him, and especially to pay the rent herein reserved at the time herein indicated, and the rents named by said board of arbitrators; and to keep said openings so made in the wall of the Merchants National Bank Building in repair during the life of this agreement; and the party of the second part binds and obligates itself to put no hindrance in the way of the exercise of the use of the privilege herein granted to the party of the first part, so long as he, and his heirs and assigns, keep and perform the obligations and agreements herein assumed by him.

"It is further agreed that the party of the first part is permitted to remove that part of the east party wall, now used exclusively for his present building, without recompense to the party of the second part, and by setting his new wall back two feet on his own property from the line between his lot and the lot of the party of the

second part, he is by this concession, to enjoy the use of the areaway (for light and ventilation), now in use, and the additional two feet of areaway produced by setting his new wall back two feet, and the party of the second part is to also enjoy the privilege of the additional areaway so created.

"It is further agreed that the area walls of both parties to this agreement are to be painted white and enameled.

"In testimony whereof, the parties hereto have set their hands in duplicate; and party of the second part being thereunto authorized by resolution of its board of directors, empowering the president to execute this contract in its name, upon this 10th day of July, 1909.

> "I. H. Nakdimen,
> "Atkinson Improvement Company
> "By W. J. Echols, President."

The lease was duly acknowledged and recorded. Subsequent to the execution of the contract, Nakdimen conveyed a part of his property to the other appellants, and for this reason they were, also, made defendants in the chancery court.

Under the terms of the lease, it extended over a period of ten years from the completion of the building by Nakdimen. Appellee claims that the lease contained a covenant for its perpetual renewal on a rental to be fixed by a board of arbitrators as provided in the lease.

A short time prior to the expiration of the first term for ten years, appellee made demand upon appellants to fix the rental for the next term by a board of arbitrators, as provided in the lease contract. Appellants refused to comply with this clause of the contract and claimed that the lease expired by its own terms at the end of the ten years, which was on the 10th of September, 1920.

Other facts will be stated under appropriate headings in the opinion.

The chancellor found that the lease copied above was a continuous contract and remained in force during the life of the buildings specified in it; that appellee was entitled to compensation from appellants in the nature of an annuity; that the lease calls for the rental value for the use of the elevator, stairway, and lobby to be fixed by a board of arbitrators; that appellants, upon being notified of appellee's desire to arbitrate under the contract, refused to appoint an appraiser or arbitrator; that the reasonable rental value for a period of five years is $300 per year, payable in monthly installments of $25; that the rental value at $25 may be increased on application of appellee for any month during said five-year period by showing more than a designated number of persons occupying the Nakdimen building going in and out of the building; that, owing to the fact that the Nakdimen building had become vacant for a period of three months next ensuing, appellants may abate the monthly payment of $25 as rent, by showing the actual number of persons going in or out of the building are less than a designated number; that the court retained jurisdiction of the cause in regard to the rent in order to carry out its decree by appropriate supplemental orders; that the rent fixed by the court for the use of the stairway and lobby expired five years from September 10, 1920; that at the expiration of that period the arbitration clause of the contract will again be in force and then on the failure of either party to select an arbitrator the other may apply to the court to fix the rental.

A decree was entered of record in accordance with the finding of the chancellor. Appellants, who were defendant in the chancery court, have duly prosecuted an appeal from that part of the decree holding that the lease did not expire at the end of ten years. Appellee has been granted a cross-appeal from that part of the decree fixing the rental value of the premises.

*Warner, Hardin & Warner,* and *James B. McDonough,* for appellants.

(1) The lease or contract terminated at the end of ten years. In construing a contract the court should construe it according to the spirit and intention of the parties. 1 Ark. 325. Where ambiguous, it should be construed against the grantor. 1 Ark. 325; 2 Ark. 491. The law looks to the substance and not to the form of the transaction. 52 Ark. 30. The contract must be construed as a whole. 94 Ark. 461; 53 Ark. 58. In construing a contract the court should ascertain the intention of the parties. 106 Ark. 400; 113 Ark. 174. The situation and relation of the parties will be considered. 105 Ark. 421. The lease might have been extended by the conduct of the parties. 61 Ark. 377; 71 Ark. 251. If the meaning of the contract is doubtful, the circumstances and surroundings and transactions become admissible. 52 Ark. 95; 46 Ark. 122; 55 Ark. 18; 90 Ark. 272; 97 Ark. 522; 90 Ark. 504.

(2) Courts will not construe a contract as perpetual unless they are compelled to do so. Where a contract provides its duration, that clause will prevail. 101 Ark. 22. The court will construe a contract to impose an obligation in perpetuity only when the language of the agreement compels that construction. 130 S. W. 836; 120 Mo. 447; 28 Mo. 420.

(3) Courts will not, by inference or implication, extend the duration of leases or contracts. 2 Addison Contracts, §683.

(4) Courts will construe a contract most strictly against the party who prepared it. 84 Ark. 431; 97 Ark. 522; 105 Ark. 518; 112 Ark. 1; 115 Ark. 166.

(5) Courts construe contracts most strictly against the party seeking to enforce it. 2 Page, Contr. §1120; 130 S. W. 836.

(6) The contract has not the legal requirements necessary to convey an interest in real estate. Crawford & Moses' Dig., §1495; 109 Ark. 223.

(7) The defendants were entitled to a decree modifying and rescinding the language of the contract, so as

to make it a contract for ten years only. 24 Am. and Eng. Enc. of Law 647-9; 66 Ark. 155; 32 Ark. 346; 28 L. R. A. (N. S.) 785. Grant of a privilege to use a stairway and lobby carries the meaning of an easement, and not any right or title or interest in the land. 10 Atl. 526. Such privilege is not the grant of a perpetual right. 77 Pac. 388.

(8) A vague, uncertain and indefinite contract will not be enforced in equity. 223 S. W. 393.

(9) The contract is not one which can be specifically performed. It calls for a succession of acts which cannot be consummated by one decree. 194 Pac. 945; 36 Cyc. 584; 68 Am. St. 749; 126 Cal. 657. A court will not enforce a contract to operate a mine. 39 Ill. App. 630; 82 S. W. 932; 462; 93 Pa. St. 434; 8 S. E. 664; 10 Wall. 339; 193 Pac. 210. The operation of an elevator is a mechanical service, and is not enforceable. 140 Am. St. 52. Contracts containing clauses for arbitration will not be specifically enforced. 36 Cyc. 577. The parties do not agree that the court may fix the rental. 123 Ia. 344; 6 Gill and J. 424; 6 Harr. and J. 485; 168 Mass. 339; 70 Mo. 69; 44 N. J. Eq. 349; 17 N. Y. 491; 7 N. C. 189; 1 Ohio St. 166; 3 Humph. 644.

(10) There is no ambiguity in the contract as to the right to use the stairway and lobby for a period of ten years only. In the construction of contracts containing conflicting clauses control is given to that contract which is plain, certain and specific. 72 Ark. 630; 97 Ark. 322; 116 Ark. 212. A specific limitation of time in a contract controls inferences which might be drawn from other clauses. 101. Ark. 22; 124 Ark. 90.

(11) Even if the contract is continuous during the life thereof, that does not make it a perpetual contract. Every part of the contract must be considered. 124 Ark. 90. The courts abhor perpetuities.

(12) Mutual concessions do not make the contract perpetual.

*Hill & Fitzhugh,* for appellee.

HART, J. (after stating the facts). It is the contention of counsel for appellants that under the terms of the lease contract which is copied in our statement of facts thelease expired ten years after the completion of the Nakdimen building, which was on the 10th day of September, 1920, and that the lease contained no covenant for renewal.

On the other hand, it is the contention of counsel for appellee that the lease contained a covenant for renewal which might be exercised at the end of each succeeding ten-year period.

Covenants for renewal are frequently inserted in leases for terms of years, and they add much to the stability of the lessee's interest, and afford inducement to make permanent improvements. The landlord is not bound to renew without a covenant for the purpose. Covenants for continued renewals are not favored because they tend to create a perpetuity. They are valid, however, when there is an express covenant to that effect. The general rule is that where the provision is in general terms for a renewal, the lessee is only entitled to a single renewal. A single covenant to renew a lease implies a renewal for the same term and at the same rent. 4 Kent's Commentaries; *Winslow* v. *Baltimore & Ohio Rd.,* 188 U. S. 646; Taylor's Landlord and Tenant, 9 ed., vol. 1, sec. 334; *Thaw* v. *Gaffney* (W. Va.), 3 A. L. R. 495; *Hoff* v. *Royal Metal Furniture Co.,* 103 N. Y. Supp. 371; *Tracy* v. *Albany Exchange Co.* (N. Y.), 57 Am. Dec. 538; *Western Transp. Co. of Buffalo* v. *Lansing,* 49 N. Y. 499, and *Cunningham* v. *Pattee,* 99 Mass. 252.

The lease contract under consideration does not contain any express covenant for continued renewals, and the chancellor erred in holding that the lease continued during the life of the buildings specified in the contract.

On the other hand, when the lease is read from its four corners in the light of the situation and condition existing at the time of its execution, it is fairly inferable

that the parties contemplated a renewal of the lease at the expiration of the period of ten years from the completion of the Nakdimen building. This is shown by the fact that the parties provided for a board of arbitrators to fix the rental value after that period of time expired. This indicates that they intended for the lease to be extended for another term. If they had intended that the lease should expire after the ten-year period, it would have been a vain and idle thing to have provided a board of arbitrators to fix the rent thereafter. This view is strengthened when we consider that the lease provides for the erection and operation of an elevator for the common use of both buildings. Therefore, we hold that, when the language of the lease is considered in its entirety, it was intended by the parties that there should be a renewal of the lease for the period of ten years upon a rental to be fixed by a board of arbitrators as provided in the lease.

Appellants declared that the lease was terminated by its own terms at the expiration of ten years and refused to comply with its provisions any longer.

The court rendered a supplemental decree in which it ordered appellants to restore the operation of the elevator service in the Nakdimen building. The appeal also challenges the correctness of this holding.

We think the court erred in directing appellants to continue the elevator service. Chancery courts will not decree the specific performance of contracts requiring continuous acts involving mechanical skill, and judgment or technical knowledge or acts requiring special skill, judgment and discretion. 25 R. C. L., sec. 117, p. 303, case note to 140 Am. St. Repts., p. 62; case note to 68 Am. St. Repts. 760-761.

The courts generally recognize that to enforce the specific performance of such contracts would unreasonably tax the superintendence of the court. In recognition of the principle, this court has held that equity will not

decree the specific performance of a contract to build a levee for the reason that there is no reasonable method by which such a decree can be enforced. *Leonard* v. *Bd. Dir. Plum Bayou Levee Dist.,* 79 Ark. 42.

Again in the case of *Warmack* v. *Major Stave Company,* 132 Ark. 173, the court refused to direct the specific performance of a contract with an electric light company to supply current for light between itself and a manufacturing company.

The running of an elevator requires both mechanical skill and judgment, and we are of the opinion that the contract in question comes within that class of cases which courts of equity will not specifically enforce. If the court should undertake to enforce the contract in the present case, it might involve the frequent necessity of hearing complaints from the appellee, charging the appellants with a breach of duty, or similar complaints from the appellants for a breach of duty on the part of appellee. There would be no limit to the number of times the court might be called on during the life of the lease to say whether the appellants have performed their duties faithfully or efficiently. For the same reason a court of equity in the present case would not seek to enforce the contract by a mandatory injunction. The performance of the contract would require continuous duties on the part of the appellants involving mechanical skill and care of such a character that the court could not superintend it.

Again it is contended by counsel for appellants that the contract is void because it provides for the rent to be fixed by a board of arbitrators, and they invoke the general rule that an agreement to enforce a contract by arbitration will not be carried out by a court of equity. The presence of an arbitration clause in a contract does not necessarily prevent the court from acting. It is only where the act to be performed by the board of arbitrators is of the essence of the contract that the court will refuse to act.

In the present case the essence of the contract was the renewal of the lease for another term of ten years, and the fixing of the rental for that period was merely ancillary to the main contract. Where the provision for an appraisal is incidental and subsidiary to the substantive part of the agreement, the party refusing to name an appraiser or arbitrator can not be heard to complain where the court performs or provides for the performance of such service. The court in fixing the reasonable rental value treats the method as a matter of form rather than substance. So it may be said in the present case that the clause of the contract providing for a board of arbitrators to fix the rental value of the premises does not render the contract void as being too indefinite to be enforceable. *Mutual Life Ins. Co. of New York* v. *Stephens* (N. Y.), L. R. A. 1917 C, p. 809; *Grosvenor* v. *Flint,* (R. I.), 37 Atl. 304; *Kaufman* v. *Liggett* (Penn.), 67 L. R. A. 353. In each of the two cases last cited the court held that the fixing of the rental is not of the essence of a contract to renew a lease upon receipt of notice of that effect upon a rental to be fixed by arbitrators to be appointed by the parties. See, also, *Castle Creek Water Co.* v. *Aspen* (U. S. Ct. Ct. of Appeals), 8 A. & E. Ann. Cas., p. 660.

On the question of the reformation of the lease contract, but little need be said. In *Welch* v. *Welch,* 132 Ark. 227, we reviewed the authorities on this question, and held that, while parol evidence is admissible in an action to reform an instrument on the ground of fraud and mistake, the evidence must be clear and convincing to warrant a reformation of the instrument. No useful purpose can be served by stating or discussing the evidence on this branch of the case. We need only say that it clearly falls short of the requirement of our decisions on the subject, and appellants are not entitled to reformation.

The court fixed the rental value of the premises for a period of five years, and then provided that the matter

might again be taken up by it if the parties refused to arbitrate.

There is some confusion in the testimony as to what the rental value of the elevator service should be, and for this reason and the further reason that the decree must be reversed and the cause remanded, the court will be directed to make a further finding on this branch of the case, and each party will be allowed to take additional proof therefor.

The result of our views is that there could have been only one renewal of the contract for the period of ten years from the 10th of September, 1920, and no specific performance of that contract could be enforced. The record shows that appellee applied to appellants for a renewal of the lease and for the appointment of a board of arbitrators under the contract to fix the rent. Appellants declined to appoint an arbitrator and to further perform the contract. This constituted a breach of the contract on the part of appellants. Having denied appellee the specific performance of the contract, it was entitled to recover from appellants for the damages suffered on account of the breach of the contract by appellants. The rule is that, chancery having properly assumed jurisdiction of an action, it will determine all issues presented by the pleading and evidence. In other words, when equity takes jurisdiction for one purpose, it takes it for all purposes and will grant complete relief.

Upon the remand of the case for the error in granting specific performance of the contract, it will be the duty of the court to settle the damages which resulted to appellee from a breach of the contract by appellants. Where a tenant is unlawfully evicted from the premises by the landlord, he may recover as damages whatever loss results to him as a direct and natural consequence of the wrongful act of the landlord. *Byers* v. *Moore,* 110 Ark. 540.

In fixing the damages to be allowed to the appellee

for the breach of the contract by appellants, it will be necessary for the court to consider and fix the rental value of the premises. Therefore, for the reasons above stated, the rental value of the premises, fixed by the court, will not be considered as the correct rental value of the premises under the contract, and the court will be directed to make a new finding on that issue, and each party will be allowed to take additional proof thereon and as well on the question of the amount of damages suffered by the breach of the contract.

While chancery cases are tried *de novo* in this court, they are tried on the record made in the court below. Where a decree is reversed and a cause is remanded for further proceedings, and it appears to this court that the testimony upon any branch of the case has not been fully developed, or that the court in making a finding on a particular branch of the case has proceeded upon an erroneous theory, it is within the province of this court to allow the case to be reopened and further testimony to be taken on that point. It will be the duty of the court upon the remand of the present case to fix the amount of damages suffered by appellee by the breach of the contract upon the part of appellants, and, inasmuch as it will be necessary for the court to know the rental value of the premises for the renewal period of ten years in fixing the damages, it will be necessary for the court to fix the rental value for the elevator service for the reason that appellants refused to proceed under the arbitration clause looking to that end, as above stated. The court will allow both sides to take additional testimony on these points if they are so advised.

For the errors pointed out in the opinion the decree will be reversed and the cause remanded for further proceedings as indicated in the opinion, and not inconsistent therewith.