LONOKE NURSING HOME, INC. et al
*v.* WAYNE AND NEILL BENNETT
FAMILY PARTNERSHIP

CA 83-417                                             676 S.W.2d 461

Court of Appeals of Arkansas
Division I
Opinion delivered October 1, 1984
[Supplemental Opinion Denial of Rehearing November 28, 1984.*]

---

*GLAZE, J., concurs; CORBIN, J., not participating.

*Catlett & Stubblefield,* by: *S. Graham Catlett,* for appellants.

*Charles A. Walls, Jr.* and *Owens, McHaney & Calhoun,* by: *John C. Calhoun, Jr.,* for appellee.

JAMES R. COOPER, Judge. This appeal arises from a dispute between the appellants, who leased two buildings from the appellee for nursing home purposes, and the appellee lessor over the terms of the lease and option to renew. The chancellor declared the option to renew void for lack of definiteness, and enjoined the appellants from moving their nursing home business. From that decision, comes this appeal.

Around 1962, the appellee's predecessor, J.O. Bennett & Sons, a family partnership, built two facilities to serve as nursing homes in Lonoke and Marvell. The homes were leased to Mrs. Mason Pennock, who operated them until 1969 when she and her partner subleased the premises to the appellants. In 1973 and 1978 the appellants leased the premises directly from the Bennetts. The 1973 lease provided for an option to renew for an additional five year term on the same terms as the 1973 lease, except for the rental. The 1978 lease contained the following language:

> The second parties shall have the right and option to renew this lease upon terms and conditions and rentals to be agreed upon by the parties prior to the renewal date, which shall be compatible to similar facilities within the State of Arkansas.

In early 1983, the appellee agreed to sell the properties to a third party, subject to the lease. The appellants, at the same time, were making plans to expand other nursing home facilities which they owned and to transfer their State-allocated bed capacity from the leased homes to one in Cabot which they owned. That plan apparently began in 1980, but was stalled because of a moratorium on nursing home construction. Thus, in order for the expanded Cabot facility to utilize the Lonoke and Marvell bed capacity, those two homes would have to be closed. Neither the Lonoke nor Marvell homes met current construction requirements, but were allowed to operate under waiver. The waiver would be forever lost as to those homes if they ceased to be operated as nursing homes, absent remodeling to bring them into compliance with current standards. The appellee, fearful that the leased homes would be closed by the appellants, instituted this action, seeking to require the appellants to continue to operate the leased premises as nursing homes through the lease term, and to declare the alleged option void for indefiniteness.

For reversal, the appellants first argue that the option is valid, contrary to the chancellor's finding that it was void

because the terms of the renewal were not included in the option. Generally, courts will not supply missing terms in a lease when the parties have not stated in their agreement a definite bases to guide the court's effort to effectuate the parties' agreement. The Arkansas Supreme Court has held that "an option in a written lease to renew upon terms and conditions to be agreed upon is void for uncertainty." *Ferrill* v. *Collins*, 225 Ark. 247, 281 S.W.2d 939 (1955). However, in *Nakdimen* v. *Atkinson Imp. Co.*, 149 Ark. 448, 233 S.W. 694 (1921), the Court upheld an option which did not provide for the amount of the rental, but where the parties had agreed that a board of arbitrators would fix the rental. This method of fixing the rent was upheld because of its objective nature. The appellants argue that the language in the option which provides that the renewal is to be on terms "compatible to similar facitlities" in Arkansas is objective enough to guide the court in fixing the terms. We disagree. This option is fatally defective in that no definite method for determining the rental was established. As this Court has stated:

> Where the annual rental is not agreed upon and the contract does not otherwise provide a manner for its definite determination, the contract does not meet [the test for definiteness].

*Phipps* v. *Storey*, 269 Ark. 886, 601 S.W.2d 249 (Ark. App. 1980).

Rental rates in Arkansas; according to the testimony, ranged from $55.82 per bed to $88.66 per bed. We cannot say that the chancellor's decision not to select a figure within this range was wrong. Further, and perhaps more important, *no* terms of the renewal period were fixed. The chancellor's decision was neither clearly erroneous, nor against a preponderance of the evidence, and therefore we must affirm. ARCP, Rule 52(a).

The appellants next argue that the chancellor's injunction effectively requires them to forfeit their business, thus,

it is alleged, resulting in a windfall to the appellees of over one million dollars. We disagree. The appellants own their business, and the appellee own its buildings and land free from the lease (which has expired), and the chancellor's order simply protected the interests of both parties. The court found that the appellants should not be allowed to move the nursing home patients out of the leased premises, except in the ordinary course of business, and that decision was correct. The lease required that the appellants use the leased premises for nursing homes, and, because of the "grandfathered" status of the homes, moving the patients out would have caused a serious reduction in the fair market value of the leased premises.

Further, the spirit and purpose of the lease would have clearly been violated had the appellants been allowed to breach the lease, move out of he premises, and thereby destroy the usefulness of the premises as nursing homes.

The landlord-tenant relationship between the parties is over, the premises are free to be sold or leased by the appellee, and the assets of the nursing home business belong to the appellants. Both parties have substantial interests at stake which need protection, and the patients in the two nursing homes must be protected from unnecessary disruption. Therefore, we remand the case to the chancellor so that such orders as are necessary to ensure an orderly transition may be entered.

Affirmed, and remanded for further orders consistent with this opinion.

CRACRAFT, C.J., and GLAZE, J., agree.

Supplemental Opinion on Denial of Rehearing
November 28, 1984

679 S.W.2d 823

APPEAL & ERROR — RECORD NOT FULLY DEVELOPED — CASE REMANDED. — Where the record on an issue was not fully

developed below, that point will be remanded to the chancellor for a decision.

Petition for Rehearing; denied.

JAMES R. COOPER, Judge. By petition for rehearing filed by the appellee, and the appellants' response, both parties seek a clarification of this Court's original opinion dated October 3, 1984.

The appellee argues that clarification is needed to settle the question of whether the bed capacity of the two nursing homes, and the certificate of need, is an "asset" of the nursing home business which belongs to the appellants. The appellants respond, contending that the issue was not fully developed at trial, and that the case should be remanded for further proceedings. We agree with the appellants' position. This present dispute is one of the principal reasons we remanded the case to the chancellor.

The trial and appeal of this case involved two issues: first, whether the chancellor was correct in his ruling regarding the validity of the option to renew. We held that the chancellor correctly found the option to renew void. The second issue involved the chancellor's injunction prohibiting the appellants from taking certain actions. The decree states:

3. The lessees under said lease are obligated to operate the leased premises as nursing homes and are not authorized to relocate to other premises the beds allocated to the leased premises.

Further, the decree states that the lease expires June 4, 1983.

Neither the issue concerning the validity of the

option, nor the decision that the lease expired June 4, 1983, is raised by either party on rehearing. Neither this Court, nor the trial court, was asked to determine the respective rights and obligations of the parties *once the lease terminated.* The appellants did not develop the point because they were arguing that they controlled the bed capacity *during the term of the lease.* The appellee argued that the appellants could not, *during the lease,* apply for a new certificate of need and transfer the bed capacity to another nursing home, as such a transfer would violate the terms of the lease.

We originally remanded the case so that the chancellor could, if necessary, enter orders to ensure an orderly transition. If the parties cannot agree on the ownership of assets, or even what those assets are, such orders by the chancellor obviously will be necessary.

We did not intend, nor attempt, in our original opinion, to define what the business assets were, nor, for example, what items were fixtures or personalty. That is a task for the chancellor, if the parties cannot agree. The record is not fully developed and that issue was not tried below.

Because the judges in the division which originally decided this case are not unanimous in this supplemental opinion, it is issued by the Court sitting *en banc.*

The petition for rehearing is denied.

CORBIN, J., not participating.

TOM GLAZE, Judge, concurring. In this Court's original opinion, we upheld the chancellor's decision declaring the parties' option to renew the 1978 lease void for lack of definiteness and enjoining the appellants from moving *their* nursing home businesses. We further concluded that the parties' landlord-tenant relationship is

over so the appellee was free to sell or lease its premises and the appellants were free to take the assets of their nursing home businesses. We merely remanded this cause for the chancellor to ensure that the parties' respective interests would be protected and that an orderly transition would ensue. Both parties now seek clarification of what interests or assets go with which party. This, of course, has been the integral issue in this case all along. If appellants are permitted to remove the entire nursing home business, leaving appellee only its lands and buildings, the value of appellee's facilities is greatly reduced because the facilities are valuable as nursing homes, but not nearly so valuable for other purposes. Because the record clearly reflects these parties' respective interests, I believe we should resolve their doubts now rather than compelling them and the trial judge to go through the frustration of another hearing and, most likely, another appeal.

First, I believe the appellee gave undue emphasis to the term "certificate of need" when attempting to define each party's rights in this case. As appellee earlier pointed out in its brief, the business relationship between the parties actually commenced in 1962, long before certificates of need were authorized in 1975. *See* Ark. Stat. Ann. § 82-2311 (Supp. 1983). The undisputed evidence reflects that Mrs. Pennock — from whom appellants acquired the Lonoke and Cedar Lodge Nursing homes — applied for and was given the license to operate these nursing homes on appellee's premises. Neil Bennett, Sr., representing the appellee, testified:

> I have never held a nursing home license or an administrator's license. My family's sole association with the nursing home business is that we own the land and the buildings in which some nursing homes were operated. We did not give Mrs. Pennock any advice concerning the operation of the nursing home. The only advice we gave anybody was to operate

them so that they would stay in good standing with the State.

In sum, under Ark. Stat. Ann. § 82-346 (Repl. 1976), appellants, through their original owner Mrs. Pennock, were issued nursing home licenses to operate homes on appellee's premises only. Those licenses are not transferable; they cannot be transferred to appellee or others, nor, as the licenses were issued, can appellants operate their nursing homes operations at other than on appellee's premises. *See* § 82-346. Nevertheless [pursuant to Ark. Stat. Ann. § 82-347 (Repl. 1976)], the appellants, as the licensees, may seek the State's approval to construct new facilities. Depending upon what appellants' plans encompass, they could also be subject to § 82-2311, *supra.*

Regardless of what appellants' existing licensure rights may be under the Arkansas law, it appears eminently clear that appellee neither owns nor possesses the licenses in question and their incidental interest in appellants' licenses terminated when the parties' leasehold relationship ended. Appellee admittedly owned only the land and buildings in which appellants operated their licensed nursing home businesses, and all three lease agreements between the parties reflect this fact. These arguments were arms-length business transactions under which appellee merely furnished two facilities, and in turn, appellants paid appellee a monthly rent so they could operate in each a fifty-three patient bed unit and 132-patient bed unit. To decide that appellee has any continuing interest in or control over appellants' licenses after their lease ends would inferentially grant appellee a transferable interest in those licenses, which is clearly contrary to statutory law. *See* § 82-346, *supra.* In addition, because the subject licenses are appellants' indicia of title to operate nursing homes in the State, appellants' business — except for its tangible assets such as kitchen, dining and lounge equipment and nursing supplies — would be rendered totally worthless. On the other hand, appellants' loss would become appellee's gain because their premises

remain valuable for nursing home purposes as a result of appellee's continued, appropriated use of appellants' licenses.

In reaching this conclusion, I am aware that appellee places small emphasis on the fact that appellants were granted the licenses. Instead, appellee argues that the critical issue is who is granted the certificate of need — not the license — because the certificate is the prior authorization from the State to construct the facilities in the first instance and because it specifies the bed capacity the facilities shall have. Although such certificates were not provided by law until 1975 — six years after appellants' licenses were granted — appellee suggests that they (not appellants) were given the "authorization" by the State to build the homes in 1962 with their existing bed capacity and that "authorization" has not changed. As I indicated earlier, I am firmly of the opinion that under Arkansas' statutory law, the *licensed person* (or organization) is the *only person* who may apply with the State to alter or add to its facilities or to request permission to construct new facilities. Any such nursing home licensee who operates under a grandfathered status (as do appellants) is also the one who must obtain a certificate of need from the State before seeking construction of additional patient beds to reach licensed capacity. *See* § 82-2311(i). Here, the appellee. by showing its responsibility for obtaining the State's authorization to build the homes in 1962, cannot thereby subrogate itself to the rights of the appellants, who possess the licenses granted under § 82-346.

I still agree that this cause should be remanded so an orderly transition can be made by the parties. However, the issue on which both parties request clarification should be addressed to avoid further confusion below and other appeals to this Court. To return this cause to the trial court to determine the assets of appellants' nursing home operation is merely to delay ruling on the obvious question sought to be resolved by both parties: Does the appellee have any continuing interest in the licensed nursing home businesses and its bed capacity allocations once the appel-

lee's and the appellants' lease relationship ended? The parties fully developed the evidence and submitted excellent arguments in an effort to resolve this question. I believe the answer is no. Because this question is one of first impression involving statutory construction, perhaps the Supreme Court would agree to accept this cause on review if we would conclusively decide this issue now.