TROUTMAN OIL COMPANY, Inc. *v.* Shahlla LONE

CA 00-1453 57 S.W.3d 240

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered October 31, 2001
[Petition for rehearing denied December 5, 2001.]

348

*Larry K. Cook,* for appellant.

*Knollmeyer Law Office, P.A.,* by: *Michael Knollmeyer,* for appellee.

JOHN B. ROBBINS, Judge. This appeal arises from a breach-of-contract action regarding a lease agreement brought by appellee Shahlla Lone (Lone), the lessee, against appellant Troutman Oil Company, Inc. (Troutman), the lessor. The Lonoke County Circuit Court found that the lease was validly renewed for a term of ten years by Lone, that Troutman breached the contract by terminating the lease without good cause, and that Lone was entitled to damages for lost profits, attorney's fees, and costs in the total sum of $96,980.17. Troutman raises the following points for reversal: (1) that the trial court erred in finding the option to renew the lease was validly exercised when the option contained no terms, rendering it void, and when there was no notice of renewal; (2) that the trial court erred when it denied Troutman's attempts to admit evidence of prior leases between it and other lessees to show the parties' intent regarding rental rates; and (3) that the trial court erred by denying Troutman's motion for new trial. We affirm the trial court's decision.

A more detailed examination of the facts is necessary to an understanding of this appeal. Troutman is in the business of supplying gasoline, oil, and similar products to service stations. While it rents the service station facilities to lessees, Troutman owns the gas in the underground tanks, and the lessee acts as a salesman of the gas and takes a percentage of the gas sales as commission. Lone leased from Troutman a gas station and convenience store located in Cabot. The lease agreement, prepared by Troutman, read in relevant part:

> 2. RENT. . . . The rent shall be as follows: 500.00 (FIVE HUNDRED DOLLARS) per month beginning 2nd day of Jan. 1998 and each 1st day of month thereafter for the term of this lease.
>
> 3. TERM. The term of this agreement shall begin on 2nd day Jan. 1998 and shall run continuously for 1 (ONE) year and shall have one full ten years option to lease again. Troutman shall retain the right to cancel this lease with lessee upon lessee not fulfilling with any or all of the provisions of this agreement.

. . . .

8. ASSIGNMENT. Lessee shall not assign this lease or sublet the leased premises without prior written consent of Troutman. Any such assignment or subletting shall in no way relieve lessee from liability for the obligation imposed by this lease.

[Misspellings corrected.]

Lone sublet the premises by an agreement entered January 2, 1998, wherein he sublet the premises for operation by his sub-lessee in consideration for rental payments of $1500 per month. Troutman gave Lone written consent to this sublease by letter dated January 20, 1998, in which it was stated that the consent letter became a part of the lease agreement. The letter was signed by Charlie Troutman, the company vice president and father of the company president.

Troutman, through its president Toby Troutman, gave Lone notice on May 27, 1999, that it was terminating the lease because Lone had sublet the store in violation of the prior-consent requirement. On September 17, 1999, Lone sued Troutman for breach of the lease agreement, contending that the option to renew was validly exercised, that Troutman had consented to a sublease of the property, and that there was no justification for termination. Troutman countered that Lone's occupancy of the station after January 2, 1999, was on a month-to-month basis, or alternatively that Lone breached the lease by failing to make daily deposits, giving bad checks to Troutman, and failing to provide copies of current inventory upon request, all in violation of other terms in the lease agreement.

The trial judge held for Lone, rendering his findings in a letter opinion that found that the "[a]ctions of parties inferred the renewal of the lease for the ten year term," and that Troutman had insufficient reasons for terminating the lease. Compensatory damages were awarded for the lost profits of $1000 per month (based on the difference between Lone's $500 per month rent obligation and the $1500 per month rent receivable from his sublessee), added to fees and costs. This appeal resulted.

*Whether the Option to Renew was Void and*
*Whether it was Properly Exercised*

■ ■ Appellant first argues that the contract was void for vagueness and could not be renewed on uncertain terms. Our standard of review of a circuit court's finding following a bench trial is whether that finding was clearly erroneous. *Burke v. Elmore*, 341 Ark. 129, 14 S.W.3d 872 (2000); *City of Pocahontas v. Huddleston*, 309 Ark. 353, 831 S.W.2d 138 (1992). However, we note that the determination of whether a contract is ambiguous is a matter of law. *Western World Ins. Co. v. Branch*, 332 Ark. 427, 965 S.W.2d 760 (1998). The finding that the renewal provision was not void is not clearly erroneous.

Troutman argues that this ten-year renewal provision is void because it does not contain the terms necessary to constitute a valid option. We disagree. There is neither ambiguity nor absence of any essential terms in the option language. The option given Lone under the lease agreement was to continue the lease on the same terms for one additional period of ten years, per the plain language used.

■ ■ We have recognized that other lease terms have been found void for vagueness, particularly in the context of lease-renewal options. In *Lonoke Nursing Home, Inc. v. Wayne and Neil Bennett Family Partnership*, 12 Ark. App. 282, 285, 676 S.W.2d 461, 463 (1984), Judge Cooper wrote that the lease option to renew therein was void for vagueness because it did not include the terms for the renewal:

> Generally, courts will not supply missing terms in a lease when the parties have not stated in their agreement a definite basis to guide the court's effort to effectuate the parties' agreement. The Arkansas Supreme Court has held that "an option in a written lease to renew upon terms and conditions to be agreed upon is void for uncertainty." *Ferrill v. Collins*, 225 Ark. 247, 281 S.W.2d 939 (1955). However, in *Nakdimen v. Atkinson Imp. Co.*, 149 Ark. 448, 233 S.W. 694 (1921), the Court upheld an option which did not provide for the amount of the rental, but where the parties had agreed that a board of arbitrators would fix the rental. This method of fixing the rent was upheld because of its objective nature. The appellants argue that the language in the option which provides that the renewal is to be on terms "compatible to similar facilities" in Arkansas is objective enough to guide the court in fixing the

terms. We disagree. This option is fatally defective in that no definite method for determining the rental was established. As this Court has stated:

> where the annual rental is not agreed upon and the contract does not otherwise provide a manner for its definite determination, the contract does not meet [the test for definiteness]. ·

*Phipps v. Storey*, 269 Ark. 886, 601 S.W.2d 249 (Ark. App. 1980).

 Likewise, in *Heral v. Smith*, 33 Ark. App. 143, 145–146, 803 S.W.2d 938, 940 (1991), we found an option term too vague to enforce:

> We agree with the trial court that the option for renewal in the original lease was void for uncertainty. Generally, courts will not supply missing terms in a lease when the parties have not stated in their agreement a definite basis to guide the court's effort to effectuate the parties' agreement. *Lonoke Nursing Home, Inc. v. Wayne and Neil Bennett Family Partnership*, 12 Ark. App. 282, 676 S.W.2d 461 (1984). The supreme court has consistently held that an option in a written lease to renew upon terms to be agreed upon in the future is void for uncertainty. *Hatch v. Scott*, 210 Ark. 665, 197 S.W.2d 559 (1946). In the case at bar, the statement that the amount of rental could not exceed the cost-of-living index is simply not objective enough to guide the court in fixing the terms of a new lease and therefore cannot be enforced.

Essentially, these cases recognize that those kinds of provisions are nothing more than an agreement to reach an agreement, which are too vague to enforce. *See, e.g., Phipps, supra.* However, we agree with the trial court that there is no such agreement to agree in the case on appeal before us. Indeed, the terms are very clear: The rent is $500 a month for the term of the lease; the term is one year with one full ten years option to lease again. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed. *Coble v. Sexton*, 71 Ark. App. 122, 27 S.W.3d 759 (2000). Different clauses in a contract must be read together and construed so that all of its parts harmonize, if that is at all possible. *Boatmen's Ark., Inc. v. Farmer*, 66 Ark. App. 240, 989 S.W.2d 557 (1999).

██ ██ As to whether Lone was charged with the duty to specifically notify Troutman of intent to renew after the first year

expired, we find no clear error in the trial judge's conclusions. The trial judge cited to 17A AM. JUR. 2D *Contracts* § 519, which states that if a fixed-time contract provides that a party holds an option to continue the agreement for another similar term, "notice of an election to exercise the option to renew will not be required, in the absence of a contrary provision in the agreement; a continued exercise of the rights conferred by the contract, after the expiration of the first term of its duration, will be sufficient." Likewise, in 17B C.J.S. *Contracts* § 501, it states that: "[c]ontinuing to act under a contract effectively renews it where it . . . otherwise grants a privilege of renewal which is not dependent on any prior notice." Thus, there is support for the conclusion reached by the trial court that the parties effectively renewed the ten-year option on the same terms as the one-year lease by continuing to act in the lessor/lessee capacity after the first year expired. It is noteworthy to add that Troutman did not attempt to terminate the lease until five months after the one-year term had expired, lending support to a waiver of any notice thought required and an acknowledgment of an exercise of the ten-year option. Furthermore, Troutman relied on a provision in the lease as its purported basis for terminating the lease, *i.e.*, Lone's subleasing the property without prior written consent, an invalid basis as conceded at trial. The other alleged defaults occurred after the termination was effectuated and Lone had been ousted.

To illustrate waiver, the case of *Riverside Land Co. v. Big Rock Stone & Material Co.*, 183 Ark. 1061, 40 S.W.2d 423 (1931), is instructive. There, the supreme court, acknowledging that the giving of notice was a condition precedent to the extension of the lease in that case, held that the lessor had waived the lessee's failure to give notice of the extension by accepting rent for over a year, without any objection, before the lessee gave notice of its desire to extend the lease. *See id.*

 ██ This is supported in *Stallings v. Poteete*, 17 Ark. App. 62, 67, 702 S.W.2d 831 (1986), where it was stated:

> Our supreme court has long held that a general covenant to renew is sufficiently certain because it imports a new lease like the old one upon the same terms and conditions. *Keating v. Michael*, 154 Ark. 267, 242 S.W. 563 (1922). Here, the term of the lease is provided in the same paragraph as the renewal option.

Based upon the foregoing authorities, the trial court did not err in declining to hold the option right void for vagueness. The lease

contract did not make the renewal dependent upon certain undefinable acts or facts, and the renewal was effective in the absence of a required-notice provision.

*Refusal to Admit Prior Unrelated Leases*
*into Evidence*

Troutman argues that the circuit court abused its discretion in not permitting it to introduce evidence of two prior leases of this convenience store location to demonstrate trade customs and usages in the context of gas/convenience store rentals and options to renew. In sum, the prior leases were intended to demonstrate that Troutman never intended to lease this property for $500 per month for ten years, and that it intended to negotiate the monthly rent upon notice of intent to renew. The two leases dated 1993 and 1995 were with other tenants and provided for $1000 per month rent. The trial court excluded the leases on the basis of irrelevancy. The trial court did not err.

 Under Ark. R. Evid. 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Bice v. Hartford Accident & Indem. Co.*, 300 Ark. 122, 777 S.W.2d 213 (1989). The trial court has discretion in determining the relevance of evidence, *Simpson v. Hurt*, 294 Ark. 41, 42, 740 S.W.2d 618 (1987), and its decision on such a matter will not be reversed absent a manifest abuse of that discretion. *Wood v. State*, 20 Ark. App. 61, 65–66, 724 S.W.2d 183 (1987); *see also Oxford v. Hamilton*, 297 Ark. 512, 515, 763 S.W.2d 83 (1989); *Waeltz v. Arkansas Dep't of Human Servs.*, 27 Ark. App. 167, 171, 768 S.W.2d 41 (1989).

 Appellant wanted the court to infer that a higher rent would surely have been contemplated for any renewal of the lease as evidenced by *other lessees'* contracts at this location. Those contracts were irrelevant. Perhaps evidence of negotiations that occurred *between Troutman and Lone* prior to entering into the subject lease agreement would be relevant to resolve any ambiguity in their agreement had there been any, but other contracts are not relevant. *See, e.g., Sexton Law Firm, P.A. v. Milligan*, 329 Ark. 285, 948 S.W.2d 388 (1997) (holding that in a breach-of-contract suit between former associate and firm, the trial court properly excluded as irrelevant the testimony of a law school professor who would explain customary practice when an attorney leaves a law

firm); *P.A.M. Transport, Inc. v. Arkansas Blue Cross & Blue Shield*, 315 Ark. 234, 868 S.W.2d 33 (1993) (holding that the testimony of manager of health-care plan administrator's actuarial division that "maximum liability" clause in parties' contract was same as that used in insurance industry standard form was of questionable relevancy in employer's suit for breach of contract and deceit; trial court properly excluded it).

### Denial of Motion for New Trial and for Findings of Fact

Troutman's last point on appeal is not properly before us for consideration. On July 10, 2000, Troutman timely filed its notice of appeal from the underlying judgment that was entered June 19, 2000. Troutman's motion for a new trial and amended findings of fact filed June 29, 2000, was not ruled on by the trial court; therefore, it was deemed denied July 29, 2000, nineteen days after Troutman's notice of appeal was filed.

According to Rule 4 of the Arkansas Rules of Appellate Procedure—Civil, a notice of appeal filed after the judgment is entered, but before a posttrial motion is resolved, is effective to appeal the underlying judgment. Ark. R. App. P.—Civ. 4(a) and (b). But, "[a] party who also seeks to appeal from the grant or denial of the motion shall within thirty (30) days amend the previously filed notice, complying with Rule 3(e)." There is no amended notice of appeal in the abstract, and this precludes our consideration of his arguments contained in the motion.

The trial court's decision is affirmed in all respects.

STROUD, C.J., GRIFFEN, and VAUGHT, JJ., agree.

BIRD and NEAL, JJ., dissent.

SAM BIRD, Judge, dissenting. The majority holds that the lease-renewal clause is not ambiguous and clearly means that the same terms and conditions shall apply to the ten-year renewal period. I agree with the majority that this clause is not ambiguous; however, I do not agree with the conclusion of the majority that this unambiguous clause creates a general covenant to renew, by which the terms and conditions of the original one-year lease are made applicable to the ten-year renewal term.

The majority states that "[t]he option given Lone under the lease agreement was to continue the lease on the same terms for one additional period of ten years, per the plain language used." This plain language, which the majority construes as a general covenant to renew, states that "[t]he term of this agreement shall begin on the 2nd day Jan. 1998 and shall run continuously for 1 (ONE) year and shall have one full ten years option to lease again."

When no rent or other material term is specified in the contract, and no objective means for determining such term is specified, the contract must fail for uncertainty. *See Heral v. Smith*, 33 Ark. App. 143, 803 S.W.2d 938 (1991); *Lonoke Nursing Home v. Bennett Family P'ship*, 12 Ark. App. 282, 676 S.W.2d 461 (1984).

In *Lonoke Nursing Home*, the dispute centered on an option to renew a property lease. The agreement provided that the renewal terms were to be "compatible to similar facilities." The chancellor held that the option was void for lack of definiteness. This court affirmed, stating that the option was "fatally defective in that no definite method for determining the rental was established." *Lonoke Nursing Home, supra*, at 285. In *Heral*, an option-to-renew clause provided for the terms and conditions of the renewed period to be negotiable, but not to exceed the annual cost-of-living index. The chancellor held that the clause was void for vagueness. This court affirmed, stating that "courts will not supply missing terms in a lease when the parties have not stated in their agreement a definite basis to guide the court's effort to effectuate the parties' agreement." *Heral, supra*, at 145.

The majority concludes that the present renewal clause is enforceable as a general covenant to renew. A general covenant to renew incorporates the same terms and conditions into the new lease. *See Keating v. Michael*, 154 Ark. 267, 242 S.W. 563 (1922). In *Keating*, Michael leased to Keating the west half of a lot. The contract provided to Keating an option to lease both the west and east halves of the lot at the end of the initial lease term. Our supreme court stated that this evidenced a new lease being formed because the option covered additional land, rather than a mere renewal of the same terms and conditions. Due to the lack of agreement as to the rent amount and the finding that there was no general covenant to renew, the court held that the contract failed for indefiniteness.

Similar to the *Keating* contract, which provided that the option for the renewed lease could cover land in addition to that covered

by the original lease, the original lease term in the case at bar was for one year, whereas the renewal option provides for a term of ten years. The same terms and conditions cannot simply be applied to the renewal period because the parties have already explicitly changed the terms and conditions of the renewal period by providing for a longer lease term, thus precluding its enforcement as a general covenant to renew. The parties failed, however, to provide for the amount of rent applicable to the renewal period; thus, the contract must fail for indefiniteness.

To construe the lease renewal clause as a general covenant to renew would contradict the contract's express terms. The second paragraph of the contract provides that the monthly rent shall be $500 per month "for the term of the lease." The third paragraph states that "[t]he term of this agreement shall begin on the 2nd day Jan. 1998, and shall run continuously for 1 (ONE) year and shall have one full ten years option to lease again." The term of the agreement provides only for a one-year term; thereafter, there is an *option* for an additional term.

Different clauses in a contract must be read together and construed so that all of its parts harmonize, if that is at all possible. *Sweeden v. Farmers Ins. Group*, 71 Ark. App. 381, 30 S.W.3d 783 (2000). To read the renewal clause as integrating the $500 rental rate for the ten-year renewal period would contradict the express provision that the $500 rental rate applied to the expressed one-year term of the lease. These different clauses are harmonized by recognizing that the contract explicitly provides the rental rate for the one-year lease and explicitly remains silent as to the rent for the renewal period. Otherwise, construing the clauses would contradict the contract's express terms.

Because the contract fails to provide for the amount of rent for the renewal period and because the clause cannot be enforced as a general covenant to renew, the contract is void for indefiniteness; therefore, I would reverse with instructions to the trial court to dismiss appellee's complaint.

I am authorized to state that Judge NEAL joins in this dissenting opinion.