James Carl LAIRD and Donna Laird  *v.*
WEIGH SYSTEMS SOUTH II, INC.
and Wade H. Jones

CA 06-890                                   255 S.W.3d 900

Court of Appeals of Arkansas
Opinion delivered April 25, 2007

394

*Mark E. Ford*, for appellants.

*Gilker & Jones, P.A.*, by: *Paul Alvin Gilker*, for appellees/cross-appellants.

DAVID M. GLOVER, Judge. A Scott County jury determined that appellant, James Laird, fraudulently transferred stock in two companies, Quad Productions, Inc. (Quad), and TG Circle 4 TG Pipeline, Inc. (TG), to his wife Donna but did not fraudulently transfer stock to her in a third company, West-Ark Ford, Inc. The question before us is whether the jury's verdict was supported by substantial evidence. We hold that it was and affirm.

Appellee Weigh Systems South II, Inc. (WSS), obtained a large monetary judgment against its former chairman, James Laird, in April 2004. Apparently realizing that Laird had virtually no assets to satisfy the judgment despite having had a net worth of approximately five million dollars in 2001, WSS and one of its shareholders, appellee Wade Jones, filed suit alleging that Laird had transferred certain stocks to his wife Donna with the intent of defrauding his creditors. After a two-day trial, the jury found that the transfers of Quad and TG stocks to Donna were fraudulent but

that the transfer of West–Ark stock to her was not.[1] Judgment was entered setting aside the Quad and TG transactions, and the Lairds moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The motion was deemed denied without being ruled upon. The Lairds now argue that the trial court erred in denying their JNOV/new-trial motion.

In reviewing the denial of a JNOV motion, we will reverse only if there is no substantial evidence to support the jury's verdict and the moving party is entitled to judgment as a matter of law. *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not the place of the appellate court to try issues of fact; rather, we simply review the record for substantial evidence to support the jury's verdict. *Id.* In reviewing the sufficiency of the evidence, we need only consider the evidence that is most favorable to the appellee. *Id.* When a motion for a new trial is made on the ground that the verdict is clearly contrary to the preponderance of the evidence, we will likewise affirm the denial of the motion if the jury's verdict is supported by substantial evidence. *Barringer v. Hall*, 89 Ark. App. 293, 202 S.W.3d 568 (2005).

A transfer is fraudulent as to a creditor — whether the creditor's claim arose before or after the transfer was made — if, *inter alia*, the debtor made the transfer with the actual intent to hinder, delay, or defraud any of his creditors. *See* Ark. Code Ann. § 4-59-204(a)(1) (Repl. 2001). In determining actual intent, consideration may be given to, among other factors, whether, before the transfer was made, the debtor had been sued or threatened with suit; whether the transfer was of substantially all of the debtor's assets; and whether the transfer was to an insider. Ark. Code Ann. § 4-59-204(b) (Repl. 2001). An "insider" under subsection (b) includes a spouse. Ark. Code Ann. §§ 4-59-201(7)(i)(A) and (11) (Repl. 2001).

Our case law has recognized similar "badges of fraud" with respect to transfers of property, among them the pendency or threat of litigation. *See Rees v. Craighead Inv. Co.*, 251 Ark. 336, 472 S.W.2d 92 (1971). Moreover, conveyances made to members of a household or near relatives of a financially embarrassed debtor are

---

[1] The jury also found that certain transfers made by James Laird to his son, Adam, were not fraudulent. Those transfers are not at issue in this appeal.

looked upon with suspicion and scrutinized with care. *Ginsburg v. Ginsburg*, 353 Ark. 816, 120 S.W.3d 567 (2003); *Ralston Purina Co. v. Davis*, 256 Ark. 972, 511 S.W.2d 482 (1974).

In the case at bar, the Lairds testified that, on April 15, 1985, Donna visited Oaklawn Jockey Club and received $30,000 to $35,000 as the result of wagers on a horse she owned. With this money, they said, she purchased the Quad stock. It is not clear from the record when and how the TG stock was obtained, but the evidence indicates that it was purchased with proceeds from Quad. Both stocks, though purportedly bought with Donna's money, were held in James Laird's name from the time they were acquired. The income from the stocks was placed into James's account, but, according to him, he deposited "most of" that money into Donna's account, which she used, in part, to pay the couple's household expenses. In late 2002 and early 2003, James said, he decided to make a complete transfer of the stocks to Donna for two reasons: 1) his health was poor and he wanted to have everything in order in case anything happened to him, and 2) when he applied for Social Security disability, the Social Security Administration representative told him that he needed to get the ownership of the stocks straightened out before he could receive benefits. As a result, he transferred all of the Quad and TG stocks held in his name to Donna in February 2003.

To document their story, the Lairds rely on several exhibits, such as drafts from the Oaklawn Jockey Club reflecting pay-outs to them in April 1985; a May 1985 deposit slip showing a deposit of $19,875 into James's account; James's subsequent check to Quad for $33,000; and a summary of money that James said he remitted to Donna when income from Quad and TG was deposited into his account. Based on their testimony and this evidence, the Lairds claim, the stocks were undisputedly purchased with Donna's money, and, therefore, when the stocks were later conveyed to Donna, no fraudulent transfer occurred. *See Sieb's Hatcheries, Inc. v. Lindley*, 111 F. Supp. 705 (W.D. Ark. 1953); *Scott v. McCraw, Perkins, & Webber Co.*, 119 Ark. 492, 179 S.W. 329 (1915) (recognizing that, under some circumstances, when the wife's money is used to pay for an asset, and the asset is put in the husband's name, it is not a fraudulent transfer when the asset is later transferred to the wife).

We disagree that the evidence undisputedly shows that the stocks were purchased with Donna's money. James's credibility regarding the racetrack story was called into question at trial when

it was revealed that, in a prior deposition, he testified that the money Donna used to buy the Quad stock came from her working for two years as a draftsman and from "about twenty-some thousand dollars she got from an investment." Although James tried to explain at trial that the "investment" he was referring to was the horse race, it is the jury's prerogative to resolve questions of credibility. *Cinnamon Valley Resort v. EMAC Enters., Inc.*, 89 Ark. App. 236, 202 S.W.3d 1 (2005). As for the exhibits relied upon by the Lairds in support of their story, the jury was not required to accept, as undisputed, this evidence from an interested party. *See generally Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005). And, the exhibits lend little, if any, support to the racetrack story. None of the Oaklawn drafts are dated April 15, the date of the winning horse race, and the only two drafts dated after April 15 total about $4000, far less than the $30,000 to $35,000 that was used to fund the Quad purchase. The May 1985 deposit slip, which James said represented a portion of the funds that Donna gave him to buy the Quad stock, contains the notations "Quad" and "DG Laird" but does not conclusively show the source of the funds. Further, the deposit is for approximately $20,000, not the $33,000 that was paid for the Quad stock. Finally, the summary that James said reflected his remittance of stock income to Donna over the years is merely a one-page list that he prepared. It is not accompanied by supporting documents such as checks, deposit slips, or bank statements. Considering these factors, the jury was not required to accept as true that the stocks were purchased with Donna's money.

Additionally, the jury was not required to believe that James's health and his social-security disability claim were the motivating factors behind the transfer. There was evidence that, at the time of the transfer, at least one lawsuit was pending against James — a counterclaim for breach of contract and various torts filed by appellee Wade Jones. Although James claimed that he did not know about the counterclaim when the transfers were made, the jury was not required to accept that testimony. *Taylor, supra.*

Finally, there was evidence contradicting the Lairds' claim that the stocks had been owned by Donna all along. Financial statements signed by James in 2001 and 2002 show him as the owner of the Quad and TG stocks. Also, schedules provided to the IRS between 1993 and 2002 identify James as the shareholder in Quad and TG.

■ In light of the above, we conclude that there was substantial evidence from which the jury could have found that the transfers of Quad and TG stocks were made with fraudulent intent. The trial court therefore did not err in refusing to grant the Lairds a JNOV or a new trial.

■ The Lairds additionally argue that there was no evidence that Donna acted with fraudulent intent in connection with the transfers. *See Tipp v. United Bank of Durango*, 23 Ark. App. 176, 745 S.W.2d 141 (1988) (holding that both the vendor and the vendee must act with fraudulent intent before a conveyance will be regarded as fraudulent). Our review of the record does not show that the Lairds made this specific argument at trial, either in their directed-verdict motion or their post-trial motion. We will not address an argument made for the first time on appeal. *See Dobie v. Rogers*, 339 Ark. 242, 5 S.W.3d 30 (1999). In any event, the jury may have found fraudulent intent on Donna's part by virtue of her corroboration of the less-than-credible story about the racetrack winnings; her inability to document her purchase of the Quad stock; her testimony that she did not know how she came to invest in the TG stock; and her inability to explain the discrepancy in her husband's testimony about the Quad stock's acquisition.

■ The next issue, raised by WSS on cross-appeal, concerns James's 1997 transfer to Donna of stock in West-Ark Ford. Inc. WSS argues that there was no substantial evidence to support the jury's finding that this transfer was not fraudulent. Based on this court's holdings in *King v. Powell*, 85 Ark. App. 212, 148 S.W.3d 792 (2004), and *Southwestern Bell Telephone Co. v. Garner*, 83 Ark. App. 226, 125 S.W.3d 844 (2003), we believe that WSS's argument is procedurally barred because, at trial, WSS did not move for a directed verdict.[2] Where there has been a trial by jury, the failure of a party to move for a directed verdict at the conclusion of all the evidence because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict. Ark. R. Civ. P. 50(e) (2006). This waiver extends to the appellate level, and we will not address a sufficiency-of-the-evidence argument on

---

[2] WSS also did not file a post-trial motion challenging the sufficiency of the evidence or seeking a new trial.

an appeal from a jury trial where the party seeking reversal did not make that argument at trial. *See Garner, supra.* This is true even where the party challenging the sufficiency of the evidence on appeal was the plaintiff below. *Id.; see also King, supra.*[3]

If we were to address the merits, however, we would affirm. The jury alone determines what weight to give the evidence, and may reject or accept all or any part of the evidence that it believes to be true. *See generally Teater v. State*, 89 Ark. App. 215, 201 S.W.3d 442 (2005). In the present case, despite evidence that James continued to claim ownership of and exercise control over the West-Ark stock long after the purported transfer and despite WSS's claim that there was. inadequate consideration for the transfer, there was no evidence that, when this transfer occurred in 1997, James had debt problems or lawsuits pending against him. The jury may therefore have concluded that, despite his inconsistent representations concerning the stock or a possible lack of consideration, James did not transfer the stock with the intent to hinder his creditors. There is, therefore, substantial evidence to support the jury's finding that the West-Ark stock was not fraudulently transferred.

Affirmed.

ROBBINS and HEFFLEY, JJ., agree.

---

[3] The practicality of requiring a plaintiff to move for a directed verdict as a prerequisite to challenging the sufficiency of the evidence is problematic. *See King, supra* (Bird, J., concurring). We choose, however, to follow the established precedent in *King* and *Garner*, and the language of Rule 50(e), which does not distinguish between a plaintiff and a defendant but simply states that the "failure of a party" to move for a directed verdict constitutes a waiver. We will ask the Supreme Court Committee on Civil Practice to explore this aspect of Rule 50(e).