Michael BIBBS, L.D. Mason, and MJ Construction Co., Inc. *v.* COMMUNITY BANK

CA 07-808 278 S.W.3d 564

Court of Appeals of Arkansas
Opinion delivered March 5, 2008

[Rehearing denied April 9, 2008.]

464

*Eichenbaum, Liles & Heister, P.A.*, by: *James H. Penick, III*, for appellants.

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*; and *Stuart Law Firm, P.A.*, by: *J. Michael Stuart* and *Ginger Stuart Schafer*, for appellee.

B RIAN S. MILLER, Judge. Appellants Michael Bibbs, L.D. Mason, and M J Construction Co, Inc., appeal from a summary judgment in favor of appellee Community Bank. The circuit court ruled that appellants lacked standing to sue the Bank and that their amended complaint, naming additional plaintiffs who purportedly had standing, was time-barred and did not relate back to the original filing. We affirm.

In 2000, Bibbs, Mason, and M J Construction purchased 120 acres in Lonoke County for subdivision development. They financed the purchase with a three-year, $375,000 loan from the Bank, and the Bank took a mortgage on the property as security. The loan document provided that a final balloon payment for the unpaid balance was due on April 25, 2003. But, according to Bibbs, he did not expect to pay in accordance with the loan's written terms because his prior dealings with the Bank would have permitted him to roll the balance over into a new loan.

By early 2003, the Bank showed every intention of enforcing the terms of the loan and was concerned about appellants' ability to make the upcoming balloon payment. When appellants failed to pay, the Bank sued for foreclosure on August 1, 2003. During this same period, the Bank filed several replevin and foreclosure actions against appellants and a related company,

Solomon Investments, Inc., on other loans totaling about $700,000. On August 25, 2003, Bibbs filed Chapter 7 bankruptcy. Mason filed Chapter 7 bankruptcy on February 8, 2005, and filed Chapter 13 bankruptcy some months later.

On August 8, 2005, appellants, through attorney James H. Penick III, sued the Bank for breach of the covenant of good faith, breach of fiduciary duty, fraud, conversion, unjust enrichment, and intentional infliction of emotional distress. They alleged that the Bank engaged in numerous acts of misconduct and forced them into bankruptcy. The Bank answered that appellants lacked standing to file suit.

On February 13, 2007, the Bank moved for summary judgment on the standing issue, arguing that Bibbs's and Mason's bankruptcy trustees had the exclusive right to prosecute the lawsuit. Appellants amended their complaint on March 22, 2007, to include their bankruptcy trustees as plaintiffs. They maintained in their response to the motion for summary judgment that they (appellants) were the appropriate parties before the court but that "the claims have been, and continue to be pursued on behalf of the estate." They attached an affidavit from Bibbs's trustee, James Dowden, which stated: 1) during Dowden's tenure as trustee he "became aware of the Debtors' assertion that they had a cause of action against Community Bank"; 2) that this led to the hiring of attorney James Penick to pursue the claim, for which Dowden obtained the bankruptcy court's permission in September 2005 (after appellants' suit was filed); 3) that Dowden recorded the lawsuit as a potential asset of the bankruptcy estate in December 2005; 4) that the claim was "being pursued on behalf of the Chapter 7 bankruptcy estate by Mr. Penick as special counsel to the Trustee"; 5) that "this is the proper way of handling such litigation"; 6) that, if the claim were settled and approved by the bankruptcy court, the funds would be payable to the bankruptcy estate. Appellants also argued that the Bank waited too long to assert its standing argument and that, in any event, M J Construction remained as a proper party.

The Bank moved to dismiss the amended complaint on the ground that it was filed outside the three-year statute of limitations. The Bank also filed a certificate from the Secretary of State reflecting that M J Construction's corporate charter was revoked on December 31, 2003, and not reinstated to good standing until April 9, 2007.

On June 4, 2007, the circuit court granted the Bank's motion for summary judgment. The court ruled that 1) Bibbs's and Mason's claims were the property of the bankruptcy estate and could only be filed by the bankruptcy trustees; 2) therefore, neither Bibbs nor Mason had standing to file the original complaint; 3) by the time the amended complaint was filed adding the trustees as plaintiffs, the statute of limitations had run; 4) the amended complaint did not relate back to the original filing because the original complaint was void *ab initio*; 5) M J Construction lacked standing because it was not a corporation in good standing on the date the complaint was filed. Appellants appeal from this order.

## Standing

Appellants argue that the trial court erred in ruling that Bibbs and Mason lacked standing to file the original complaint on August 8, 2005.[1] Standing is a matter of law and is reviewed de novo on appeal. *See Pulaski County v. Ark. Democrat-Gazette*, 371 Ark. 217, 264 S.W.3d 465 (2007).

When a debtor commences a Chapter 7 bankruptcy, an estate is created comprised of all the debtor's legal and equitable interest in property. 11 U.S.C. § 541(a)(1) (2007). Bankruptcy estate property is broadly defined to encompass conditional, future, speculative, and equitable interests, and includes all causes of action the debtor could have brought at the time of the bankruptcy petition. *U.S. v. Transp. Admin. Servs.*, 260 F.3d 909 (8th Cir. 2001). *See also Fields v. Byrd*, 96 Ark. App. 174, 239 S.W.3d 543 (2006); *Vickers v. Freyer*, 41 Ark. App. 122, 850 S.W.2d 10 (1993). When a trustee is appointed to administer the property of the estate in bankruptcy, he has the exclusive right to prosecute causes of action that are the property of the bankruptcy estate. 11 U.S.C. §§ 323, 704(a)(1) (2007); *Fields v. Byrd, supra*.

Bibbs argues first that his causes of action accrued after he filed bankruptcy. If he were correct, the lawsuit would belong to him rather than the bankruptcy estate. Our reading of the complaint and Bibbs's deposition, however, convinces us that Bibbs's causes of action accrued prior to his filing bankruptcy.

---

[1] Appellants do not argue on appeal that M J had standing to file suit. We therefore consider that argument abandoned. *See Robbins v. Johnson*, 367 Ark. 506, 241 S.W.3d 747 (2006).

First, the core of Bibbs's complaint is that the Bank forced him into bankruptcy, which necessarily entails pre-bankruptcy misconduct. Secondly, the numerous incidents of wrongdoing on which Bibbs's causes of action were based generally occurred before Bibbs filed bankruptcy on August 25, 2003. Bibbs's causes of action were viable at that point. *See Courtney v. First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989) (holding that a cause of action accrues the moment the right to commence the action comes into existence). The fact that some of the Bank's alleged misconduct pertaining to these causes of action streamed into latter 2003 and early 2004 does not change our decision. The causes of action themselves accrued prior to the bankruptcy filing and, therefore, were the property of the bankruptcy estate. *Fields v. Byrd, supra.*

We further note that Bibbs's argument on this point is directly contrary to his contention below that "the claims have been, and continue to be pursued on behalf of the estate." It is also contrary to the affidavit of Bibbs's trustee, which stated that the lawsuit was being pursued on behalf of the Chapter 7 bankruptcy estate and that, if the lawsuit were settled, the funds would be payable to the bankruptcy estate. If these matters are taken at face value, the claim belongs to the bankruptcy estate, in which case the trustee had the exclusive right to prosecute it. *Fields v. Byrd, supra.*

 Bibbs also argues that he had standing to sue because Trustee Dowden ratified his filing of the complaint. He cites *Bratton v. Mitchell, Williams, Selig, Jackson & Tucker*, 302 Ark. 308, 788 S.W.2d 955 (1990), where the debtor, Bratton, filed a claim that should have been filed by his bankruptcy trustee. Our supreme court stated:

> In this case, there is no evidence that the bankruptcy trustee abandoned this claim or that the trustee joined in *or ratified* Bratton's filing of this complaint in circuit court. In fact, the evidence in the record indicates the contrary.

*Id.* at 309, 788 S.W.2d at 956 (emphasis added). Bibbs interprets this passage to mean that a trustee may ratify the debtor's filing of a claim belonging to the bankruptcy estate. We decline to assign such import to *Bratton*'s singular mention of ratification. The Bankruptcy Code and case law are uniform in providing that the bankruptcy trustee has the exclusive right to prosecute lawsuits belonging to the estate. *See* 11 U.S.C. §§ 323, 704(a)(1) (2007); *Fields v. Byrd, supra.* The only

notable exception is where the trustee abandons the claim. *See* 11 U.S.C. § 554(a) (2007); *Vreugdenhil v. Hoekstra*, 773 F.2d 213 (8th Cir. 1985). Clearly, Trustee Dowden has not abandoned this lawsuit. His affidavit states that the suit is being pursued on behalf of the estate.

We turn now to Mason's argument that the laws regarding a trustee's exclusive right to administer estate property do not apply to him because he filed Chapter 13 bankruptcy on August 15, 2005, and October 16, 2005. Mason is correct that, under a Chapter 13 filing, the debtor makes a plan of repayment rather than liquidates his assets, and the debtor's property remains in his hands instead of passing to the trustee. David Epstein, BANK-RUPTCY § 1-8 (1993). *See also* 11 U.S.C. § 1302(b)(1) (2007); 11 U.S.C. § 704 (2007); Historical Notes to 11 U.S.C. § 323 (2007). However, Mason's first bankruptcy filing was under Chapter 7 on February 8, 2005, which was undisputedly after his causes of action accrued. Therefore, at the moment of his Chapter 7 filing, the lawsuit became an asset of his bankruptcy estate to be administered by the trustee. 11 U.S.C. § 541(a)(1) (2007).

■ Mason contends, however, that, because he scheduled the lawsuit as an asset in his Chapter 7 bankruptcy, and the bankruptcy was later closed without the suit having been administered, the suit was "abandoned" to him. *See* 11 U.S.C. § 554(c) (2007) (providing that, when a Chapter 7 estate is closed and scheduled property has not been administered, the property is abandoned to the debtor). We decline to consider this argument. First, Mason makes the argument for the first time in his reply brief. *See Abdin v. Abdin*, 94 Ark. App. 12, 223 S.W.3d 60 (2006) (holding that we do not consider arguments raised for the first time in a reply brief). Secondly, Mason did not raise his section 554(c) argument below, and we do not consider arguments raised for the first time on appeal. *Laird v. Weigh Syst.*, 98 Ark. App. 393, 255 S.W.3d 900 (2007).

■ Finally on the standing issue, appellants attempt to distinguish *Fields v. Byrd, supra*, on which the trial court relied. There, the debtor's tort claim accrued in 1999. In 2000, she filed bankruptcy without listing the potential lawsuit as an asset. She filed her suit in 2001. We held that the debtor had no standing to sue because the cause of action belonged to the bankruptcy estate. Appellants argue that, unlike the debtor in *Fields*, they did not conceal their lawsuit from their bankruptcy trustees. But that factor was not crucial to our holding in *Fields*. A debtor's accrued

cause of action becomes the property of the bankruptcy estate at the time the bankruptcy is commenced, regardless of whether it was scheduled.

For the above reasons, we affirm the trial court's ruling that Bibbs and Mason lacked standing to file the original complaint.[2]

### Relation Back

■ Because Bibbs and Mason lacked standing to sue in 2005, their complaint was void *ab initio*. *See Fields, supra*. Therefore, the 2007 amended complaint that added the trustees as plaintiffs did not relate back to the original filing. *See id. See also St. Paul Mercury Ins. Co. v. Circuit Ct. of Craighead County*, 348 Ark. 197, 73 S.W.3d 584 (2002); *Andrews v. Air Evac EMS*, 86 Ark. App. 161, 170 S.W.3d 303 (2004). In light of these authorities, we affirm the trial court's ruling that the amended complaint did not relate back and that, as a result, the statute of limitations ran on the causes of action.[3]

### Summary Judgment Hearing

■ Due to conflicting correspondence from the court and opposing counsel, and some understandable confusion, appellants' counsel did not appear at the summary-judgment hearing. Appellants argue that this constituted reversible error. However, we cannot see that appellants were prejudiced under the circumstances here. *See Simmons v. Dixon*, 96 Ark. App. 260, 240 S.W.3d 608 (2006) (holding that we will not reverse in the absence of prejudice).

In deference to the non-appearance of appellants' counsel, the trial court did not hear arguments from the Bank's counsel at the hearing. Instead, the court relied on the detailed and voluminous documents that the parties presented in support of their respective positions. Appellants argue that the judge "admitted he had not read all the documents submitted." In fact, the judge said that he "reviewed the pending motions, the briefs in support

---

[2] As for appellants' argument that the Bank waited too long to argue the standing issue, the issue was raised as a defense in the Bank's original answer. The Bank asserted that the claim was "assertable only by the applicable Bankruptcy trustees."

[3] Appellants do not challenge the court's ruling that the statute of limitations had run at the time the amended complaint was filed.

thereof, has taken the opportunity to review some of the documents, although I cannot conclusively say that I have exhaustively gone though each one." Our review of the hearing transcript indicates to us that the judge was eminently familiar with the facts and issues in the case.

■ Appellants also argue that the Bank was allowed to "submit evidence" at the hearing in the form of a document concerning M J Construction. However, we cannot see that the trial court considered any new evidence. Appellants appear to be referring to the certificate from the Secretary of State's office demonstrating that M J's charter had been revoked. But, that document was submitted to the trial court before the hearing.

Affirmed.

PITTMAN, C.J., and GLOVER, J., agree.