
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-258

| | |
|---|---|
| THE ACADEMY, INC., d/b/a HAAS HALL ACADEMY, and MARTIN SCHOPPMEYER, JR.<br>APPELLANTS | Opinion Delivered: February 8, 2017<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-15-554] |
| V. | HONORABLE BETH STOREY BRYAN, JUDGE |
| PARADIGM BUILDING, LLC<br>APPELLEE | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## DAVID M. GLOVER, Judge

Appellant, The Academy, Inc. d/b/a/ Haas Hall Academy ("Haas Hall"), appeals from the circuit court's ruling that it renewed two commercial leases and owed its landlord, appellee, Paradigm Building, LLC ("Paradigm"), $41,540 in rent, plus $50,000 in attorney's fees. Paradigm cross-appeals the court's calculation of the rent and the denial of late fees. We affirm on direct appeal and on cross-appeal.

### I. *Background*

Haas Hall is a public charter school in Fayetteville, Arkansas. During the times relevant to this case, the school was located in the Paradigm Building pursuant to two multi-year leases executed in January 2009 and September 2010. The leases covered a total of 13,400 square feet and ran concurrently, containing essentially the same terms. Importantly

for our purposes, they shared an expiration date of June 30, 2014, and contained a one-time renewal option for three additional years.

The renewal clause in the January 2009 lease provided, in pertinent part, as follows:

> **2.2 Renewals**. Tenant shall have the option to renew this Lease Agreement for one renewal term(s) of thirty-six (36) months. The renewal term shall be subject to all of the same terms and conditions as are set forth herein, except as otherwise provided in Section 3.2. Each option shall be exercised by written notice to Landlord, received no later than sixty (60) days prior to the expiration of the term then in effect.

The September 2010 lease contained a similar renewal provision. Both leases also required that all notices be in writing and sent by certified or registered mail. Hereafter, we will refer to the leases as a single lease, unless the context requires otherwise.

During the lease term, Haas Hall experiencing growth and frequently expressed an interest in acquiring more space for its students. In 2012, for example, the school began utilizing an adjacent, 800-square-foot space known as the "dance room" pursuant to an oral agreement with Paradigm. Additionally, Martin Schoppmeyer, on behalf of Haas Hall, and Tracy Hoskins, on behalf of Paradigm, occasionally discussed the possibility of Haas Hall's either leasing more space or purchasing the Paradigm Building.

In mid-2013—approximately one year before the lease expired—Schoppmeyer asked Hoskins if they could discuss "extending" the lease. Thereafter, Hoskins provided Schoppmeyer with a form letter, which stated that Haas Hall "would like to exercise our Renewal Option on both Leases per paragraph **2.2 Renewals** of the Agreements." This letter was never used, and no further steps were taken toward renewal at that time.

In the ensuing months, Hoskins continued to propose solutions to Haas Hall's need for additional space, including the possibility of Haas Hall's entering into a longer-term

lease, such as five or ten years, and occupying more square footage. No agreements were reached as to these matters.

In April 2014, Schoppmeyer and Hoskins began discussions in earnest about the upcoming end of the lease term. In doing so, they exchanged a series of emails and other written communications that are pertinent to this appeal. On April 14, 2014, Schoppmeyer sent an email to Hoskins that stated,

> I want to renew our lease. Do you want me to send you a letter stating as much? Can you send me a renewal lease so that I can sign it?

Hoskins responded, "As for renewing the lease, are you going to want to expand into the remaining space next door?" Schoppmeyer replied that he was not sure about additional space and needed to think about it.

Two days later, on April 16, 2014, Schoppmeyer sent another email to Hoskins. This email contained the subject line "Renewal" and asked Hoskins,

> Do you want me to send you a formal letter for the renewal as stated in the lease or will this suffice? Can you send me a contract? I need to build my budget for 2014.2015.

Hoskins responded, "Do you want me to do a new lease? Or do you want to extend the lease you have?" Schoppmeyer did not respond by email but instead sent a certified letter to Hoskins on April 22, 2014, in which he stated,

> Please allow this communication to be my official request to extend Haas Hall Academy's lease at [address]. We have communicated via email and I await our new lease agreement from you.

Hoskins replied by email on April 23, 2014, that the certified letter was not necessary. He also asked Schoppmeyer,

> Are you wanting a new 5 year lease as we spoke about, to include any additional space (at least the former dance room)?

To this, Schoppmeyer responded,

> I just wanted to follow the rules. You have been good to me. I want to have a renewal. Yes, I need the formal dance room. If you could just tell me how much a build out would cost for the rest then I could look at an expansion. I need to see how many scholars will cover the additional space.

Hoskins advised Schoppmeyer to consider renting the entire remaining space in the building for a five-year or ten-year period in order to save money.

A short time later, Schoppmeyer sent a text message asking if Hoskins had prepared a lease contract. Hoskins replied that he had not because Schoppmeyer had not yet said what he wanted to do about additional space. Schoppmeyer replied, "As of today let's just renew. I am dealing with a lot of issues. Not good." Still, Hoskins continued to inquire about a new lease with either a five-year or ten-year term. According to Schoppmeyer, he chose five years "as the path of least resistance." Hoskins ultimately drafted a ten-year lease agreement for 14,280 square feet, which included the dance room.

Schoppmeyer and his attorney voiced numerous objections to the proposed ten-year lease, and, as of July 2014, the parties had not agreed on its terms. Nevertheless, Haas Hall continued to occupy the space in the Paradigm Building that was covered by the written lease, paying monthly rent of $20,770, which was consistent with the lease's renewal rate. Schoppmeyer and his attorney would later testify that they considered Haas Hall's occupancy at this point to be on a month-to-month basis rather than under a renewal of the original lease.

On August 6, 2014, Hoskins sent Schoppmeyer an email stating, "It seems there are some misunderstandings about the status of your lease." In the email, Hoskins continued to tout the advantages of Haas Hall's having a new, longer-term lease, but he stated that, at the present time, Haas Hall had a three-year lease that would expire in June 2017—an apparent reference to Haas Hall's exercise of the three-year renewal option.

Haas Hall continued to stay in the Paradigm Building and pay monthly rent. Then, on February 19, 2015, it sent Paradigm written notice that it would "vacate the originally leased premises" by June 2015. Paradigm filed suit seeking a declaratory judgment that Haas Hall had renewed its lease for three years, through June 30, 2017.[1] By amended complaint, it also sought late fees that it had not collected from Haas Hall over the course of the original lease. Haas Hall answered that it had not renewed the lease agreement but rather had held over at the Paradigm Building on a month-to-month basis. It also asserted that Paradigm's claim for late fees had been waived. Haas Hall eventually left the building in July 2015.

A bench trial was held, and the circuit court ruled that Haas Hall had exercised the three-year option to renew the written lease. The court stated that its decision was based "in no small measure" on its ability to observe the witnesses' testimony. The court also determined that Haas Hall owed Paradigm rent of $20,770 per month for August and September 2015, for a total of $41,540.[2] Additionally, the court ruled that Paradigm had

---

[1]Paradigm also sued Schoppmeyer, who had guaranteed the lease.

[2]Haas Hall continued to pay rent until it vacated the building in July 2015. The trial took place in September 2015. Therefore, the only rent due at the time of trial was for the months of August and September 2015.

SLIP OPINION

waived its right to recover late fees by failing to collect them for over six years. These rulings were incorporated into a written order dated October 7, 2015, and the court later awarded Paradigm $50,000 in attorney's fees as the prevailing party. Haas Hall filed a timely notice of appeal, and Paradigm filed a timely notice of cross-appeal.

## II. *Direct Appeal by Haas Hall*

Haas Hall's sole argument on direct appeal is that the circuit court erred in ruling that it had renewed its lease with Paradigm.

The standard of review on an appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Crenshaw v. McFalls*, 2015 Ark. App. 186, 457 S.W.3d 705. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that an error has been committed. *Duvall v. Carr-Pool*, 2016 Ark. App. 611, ___ S.W.3d ___. We give due deference to the trial court's superior ability to determine the credibility of the witnesses and the weight to be accorded their testimony. *Jez v. Jez*, 2016 Ark. App. 594, __ S.W.3d ___.

We first address Haas Hall's argument that we must apply a de novo standard of review in this case because it involves questions of law rather than disputed questions of fact. *See Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-South, LLC*, 2015 Ark. App. 229, 460 S.W.3d 308 (holding that questions of law are reviewed de novo on appeal). We disagree. Even if, as Haas Hall argues, "there is no dispute about the meaning of paragraph 2.2 of the lease [and] no dispute about emailed and written communication between the parties," the *intent* behind the parties' communications was, and remains, in great dispute. Intent is a

question of fact. *Dugal Logging, Inc. v. Ark. Pulpwood Co.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999); *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994). Moreover, even when the evidence is undisputed, a fact question exists if different inferences and conclusions can reasonably be drawn from that evidence. *See Ver Weire v. Styles*, 2014 Ark. App. 459, 440 S.W.3d 364 (summary judgment). Here, the circuit court was called upon to view the written evidence, hear testimony, consider the witnesses' demeanor and credibility, and make a finding of fact as to whether Haas Hall had intended to renew the lease. Accordingly, the clearly erroneous standard is the correct standard of review.

We turn now to the evidence on which the circuit court based its ruling. The communications between Schoppmeyer and Hoskins in April 2014 are key. Schoppmeyer's April 14, 2014 email to Hoskins plainly stated, "I want to renew our lease." Two days later, Schoppmeyer asked if Hoskins wanted a "formal letter for the renewal as stated in the lease," a clear reference to the lease's requirement that the renewal option be exercised by written notice. When Hoskins asked if Haas Hall wanted a new lease or an extension of the current lease, Schoppmeyer sent a letter containing his "official request" to "extend Haas Hall's lease." This letter was sent by certified mail, just over sixty days before the lease was to expire, as required by sections 2.2 and 11.1 for renewal of the lease contract. When Hoskins responded that the certified letter was not necessary, Schoppmeyer stated that he "just wanted to follow the rules" and "wanted to have a renewal."

The circuit court determined that the above communications showed not only that Schoppmeyer intended to renew the lease but that he followed the lease's "roadmap to renewal" by sending a certified letter sixty days before the lease was to expire. Considering

that Schoppmeyer's emails to Hoskins repeatedly referred to renewing the lease and that he followed the dictates of the lease in doing so, we cannot say, on this proof, that the circuit court clearly erred in ruling that the renewal had been accomplished.

Haas Hall insists, however, that there was no renewal. It first cites *Heartland Community Bank v. Holt*, 68 Ark. App. 30, 3 S.W.3d 694 (1999), for the proposition that acceptance of an option must be "absolute and unconditional." In *Heartland*, we stated that "the acceptance of an offer to purchase realty must be absolute and unconditional, in accordance with the offer made, and without modification or the imposition of new terms . . . ." *Id.* at 36, 3 S.W.3d at 698 (quoting 77 Am. Jur. 2d *Vendor & Purchaser* § 49 (1997)). Haas Hall's reliance on the *Heartland* quote is misplaced.

We held in *Heartland* that a buyer's attempt to exercise an option to purchase land failed because he departed from the terms of the option and inserted a new method of payment. Thus, the import of our opinion was that the acceptance of an option must match the offer, without modifying or adding new terms. Contrary to Haas Hall's argument, we did not impose a heightened standard of proof for the exercise of an option. *See, e.g.*, *Troutman Oil Co. v. Lone*, 75 Ark. App. 346, 57 S.W.3d 240 (2001). Nor does the evidence in this case indicate that Schoppmeyer attempted to impose new terms on the renewal option or that he omitted any necessary terms in effecting his renewal.[3]

---

[3]Similarly, the cases that Haas Hall cites from other jurisdictions are distinguishable. In *Pargar, LLC v. CP Summit Retail, LLC*, 730 S.E.2d 136 (Ga. Ct. App. 2012), and *Sealy v. Physicians & Surgeons Hospital, Inc.*, 480 So. 2d 832 (La. Ct. App. 1985), the courts recognized that there is no unconditional exercise of an option if the party purporting to exercise it expressly includes new and different terms.

Haas Hall argues further that Schoppmeyer only intended to seek a one-year extension of the lease, as evidenced by his use of the word "extend" in the certified letter rather than "renew." While Schoppmeyer did so testify, none of his written communications referred to a one-year extension. Further, Haas Hall admits that Schoppmeyer, who had no legal training, was imprecise with his language, interchanging the terms "extension" and "renewal." Given that Schoppmeyer expressed his desire to "renew" the lease on more than one occasion, his occasional layman's reference to "extending" the lease is not a basis for reversing the court's ruling.

Haas Hall also points out that Schoppmeyer's communications never stated that he was exercising an "option" to renew; nor did he refer to section 2.2 of the lease contract, as was done in a 2013 form letter that Hoskins provided. However, Schoppmeyer was not required to use the particular language contained in the form letter in order to effect a renewal. Based on the language that he did use—not only in the certified letter but in his entire series of communications—the fact remains that he requested a renewal on behalf of Haas Hall and did so in accordance with the terms of the lease contract.

Finally, Haas Hall claims that Schoppmeyer's requests for a new lease agreement and Hoskins's continued push for a new, longer-term lease were inconsistent with a renewal of the existing lease, given that a renewal would simply continue the old lease on the same terms. However, as mentioned earlier, Schoppmeyer was not legally trained and sometimes used incorrect terms, such as referring to a "renewal lease." As well, Hoskins's desire for a new, longer-term lease can be explained by the fact that he was attempting to refinance the

Paradigm Building and wanted to lock Haas Hall into a long-term, written commitment on all of the space that the school occupied. As found by the circuit court:

> Obviously, the uncontroverted testimony is the bank was wanting a much longer lease than 36 months at a more favorable rate to Paradigm, so Mr. Hoskins was using all his best sales efforts and sales techniques to try and encourage Dr. Schoppmeyer to extend the lease out further, but that does not change the fact that the lease had been renewed pursuant to the renewal term in the contract for a period of 36 months.

Based on the foregoing, and having considered all of Haas Hall's arguments, we affirm the circuit court's finding that Haas Hall renewed its lease for three years.

### III. *Cross-appeal by Paradigm*

On cross-appeal, we first address Paradigm's claim that the court erred in calculating the amount of rent due under the renewal—$20,770 per month. We direct our analysis to the terms of both of the original lease agreements.

The two original leases set out the amount of Haas Hall's rent in Section 3.1, titled "Initial Rent." The January 2009 lease required Haas Hall to pay what was termed "Base Rent" of $11,184 for the first six months, then "Full Rent" of $17,279 for one year thereafter, with an increase of three percent each year. The September 2010 lease called for Base Rent of $11,544, with an eventual increase of three percent per year. Both leases provided in section 2.2 that a renewal "shall be subject to all of the same terms and conditions as set forth herein, except as otherwise provided in Section 3.2." Section 3.2 read as follows:

> **Rent for Optional Terms**. In the event the Tenant exercises its options to renew this Lease Agreement, the Rent shall:
> (a) ___ be subject to the same terms provided in the initial term for the option period(s);
> (b) ___ be determined prior to the commencement of [each] optional period;

(c) √ Other: Initial Base Rent shall be $1.55 per square foot of leased Premises per month, including any expansion thereof, assuming all Tenant Improvements have been fully paid for at the time the option period is exercised by the Tenant.

The circuit court used the $1.55-per-square-foot figure contained in the check-marked subsection (c), above, to determine the amount of rent that Haas Hall owed under the renewed lease, which covered the same 13,400 square feet as the two original leases. Multiplying that square footage by $1.55, the court computed a monthly rental payment of $20,770. However, the court refused to grant Paradigm's request to apply an annual three-percent increase to the rent. We agree with the court's ruling.

Section 3.2, quoted above, provided the parties with three choices for calculating the rent upon renewal. Had section 3.2(a) been selected, it would have allowed for the same rental terms as in the original leases, which included an annual increase. However, subsection (c), which the parties in fact selected, provided that the rent would be "Other." Subsection (c) then went on to state that an "initial base rent" of $1.55 per square foot would be charged; however, it made no provision for other prices or increases. While there is admittedly a lack of clarity here, the leases were drafted by Hoskins and negotiated by the parties with the input of attorneys, and more precise language could have been included if an annual rent increase was desired. As it stands, section 3.2 can reasonably be read to say that, if option (c) is chosen, the price for the renewal term is simply $1.55 per square foot. Accordingly, the circuit court did not clearly err in refusing to allow an increase of three percent per year during the renewal period.

Next, Paradigm challenges the circuit court's ruling that it waived the right to collect late fees that had accrued over the life of the original leases. Section 3.3 of the leases provided as follows:

> **3.3 Late Payment Fees**. In the event that any payment is not received by the 5th day of the month, a late fee will be assessed equal to ten percent (10%) of the payment due, plus $10.00 per day; calculated from the initial due date. Landlord reserves the right to refuse any partial payments of Rent and/or late fees. Landlord's acceptance of partial payment shall not constitute a waiver on Landlord's behalf of remaining monies (Rents, fees, or penalties) owed by Tenant.

At trial, Hoskins testified that Haas Hall owed almost $50,000 in late fees at the time the leases expired in June 2014. He also testified that, with the exception of one or two instances early on in the lease term, he did not bill Haas Hall for late fees or make any demand for them until after the lawsuit had been filed in 2015. Based on this testimony, the circuit court ruled that Paradigm had waived its right to the late fees.

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall be forever deprived of its benefits. *Bharodia v. Pledger*, 340 Ark. 547, 11 S.W.3d 540 (2000). It may occur when one, with the full knowledge of material facts, does something that is inconsistent with the right or his intention to rely upon that right. *Id*. The relinquishment of the right must be intentional. *Id*. However, waiver may be effected by a party's conduct or course of dealing. *See generally Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998); *Turley v. Staley*, 2009 Ark. App. 840, 372 S.W.3d 821. Waiver is ordinarily a question of fact. *Conway Commercial Warehousing, LLC v. FedEx Freight E., Inc.*, 2011 Ark. App. 51, 381 S.W.3d 94.

In the present case, Paradigm kept an accounting of Haas Hall's late fees that were assessed between 2009 and 2015. But, despite the fact that Paradigm sent Haas Hall past-

due invoices on matters such as janitorial and maintenance costs, neither those invoices nor any other invoices billed Haas Hall for the late fees over the six-year period. Moreover, there is no evidence that, during this lengthy period, Paradigm demanded that the mounting fees be paid. In April 2015, which was around the time suit was filed in this case, Paradigm did send a demand for a late fee, but it was in the amount of a single ten-percent late fee on one month's rent. These circumstances support the circuit court's factual finding that Paradigm waived its claim to the accrued late fees.

However, Paradigm argues that a non-waiver clause in the lease contracts operated to prevent any waiver of the late fees. The clause reads:

> **9.5 <u>No Waiver</u>**. The failure of Landlord or Tenant to seek redress for violation, or to insist upon the strict performance of any covenant or condition of this Lease Agreement, shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. The receipt by the Landlord of Rent with knowledge of the breach of any covenant of this Lease Agreement shall not be deemed a waiver of such breach. No provision of this Lease Agreement shall be deemed to have been waived by Landlord or Tenant unless such waiver be in writing signed by Landlord or Tenant, as the case may be.

Paradigm points out that our supreme court addressed non-waiver clauses in *Minor v. Chase Auto Finance Corp.*, 2010 Ark. 246, 372 S.W.3d 762, holding that, where such clauses are contained in a contract, a creditor's acceptance of late payments does not waive the creditor's right to insist on future compliance by the debtor. However, the situation in the present case is distinguishable. Here, the question is not whether Paradigm has waived any *future* right to collect late fees or seek other redress for late payments. Rather, the question is whether Paradigm, by its conduct, abandoned its right to seek late fees that had accrued in the past. That is not the scenario addressed by *Minor*. Consequently, *Minor* does not govern this case.

Likewise, the language of the non-waiver clause in the leases herein is directed to future, rather than past, contractual violations. Section 9.5 reads that the landlord's failure to seek redress of a violation or insist on strict performance shall not prevent "a subsequent act" from having the force and effect of an original violation. The essence of the non-waiver clause, therefore, is that the landlord's decision to forego redress on one occasion does not waive his right to insist on compliance and seek applicable remedies in the future. It does not prevent a landlord from waiving the right to seek redress for past violations.[4]

## IV. *Attorney's Fees*

Paradigm asks that we award it the attorney's fees accrued on appeal as the prevailing party, pursuant to the terms of the lease contracts. We have the authority to order the trial court to award fees for appellate work pursuant to a contractual provision. *See Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994). However, we decline to do so in this case. Although Paradigm won on direct appeal, it lost its arguments on cross-appeal. Therefore, we do not consider it the prevailing party.

Affirmed on direct appeal; affirmed on cross-appeal.

ABRAMSON and MURPHY, JJ., agree.

*Cullen & Co., PLLC*, by: *Tim J. Cullen; Henry Law Firm*, by: *Mark Murphey Henry* and *Adam L. Hopkins*, for appellants.

*Kutak Rock, LLP*, by: *Jeff Fletcher*, for appellee.

---

[4]Paradigm cites an unpublished case, *Chambers v. Myers*, CA05-384, 2006 WL 337506 (Ark. Ct. App. Feb. 15, 2006), in support of its position. Our rules prohibit citation of cases issued before July 1, 2009, that are not designated for publication. Ark. Sup. Ct. R. 5-2(c) (2016).